No. 120,031

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KOBY ROSS FISHER,
*Appellant.*


SYLLABUS BY THE COURT


1.

Under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, a warrantless entry into a private dwelling by law enforcement officers is considered unreasonable and invalid unless it falls within a recognized exception to the warrant requirement.


2.

The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. As a result, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.


3.

The emergency aid exception is a limited exception permitting a warrantless search when: (1) law enforcement officers enter the premises with an objectively reasonable basis to believe someone inside is seriously injured or imminently threatened with serious injury; and (2) the manner and scope of any ensuing search once inside the

1

premises is reasonable. The emergency aid exception limits officers to do no more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance.

4.

An officer's action is reasonable under the emergency aid exception when the circumstances, viewed objectively, justify the officer's action. An officer's subjective motivation is irrelevant.

5.

Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception and may continue an emergency investigation until assured there is no one inside in need of assistance—particularly when the officer encounters circumstances that continue to raise suspicions.

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed November 8, 2019. Affirmed.

*James M. Latta* and *Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

POWELL, J.: Koby Ross Fisher appeals the district court's denial of his motion to suppress the admission of marijuana found when law enforcement searched his house after receiving a 911 call that someone in the house had been shot. After a hearing, the district court denied Fisher's motion and ultimately found Fisher guilty following a bench trial on stipulated facts. Before us, Fisher argues the emergency aid exception does not

apply because the officers did not ask the two women who were standing outside the house, including the one who made the 911 call, any clarifying questions. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Officer Brian Johnson was dispatched to a house based on a 911 call. The female caller, who identified herself as Teresa, reported that someone had been shot at that address. When Johnson arrived, he saw two women arguing with a man on the street in front of the house. The man ran away from the officers. While other officers chased after the man, Johnson approached the house. Johnson did not see anyone injured outside and stopped to ask the women if either were hurt. Neither was injured. Johnson later learned one of the women, named Teresa, was the 911 caller. Johnson and another officer entered the house to search for anyone injured inside. The officers checked upstairs and found two locked bedroom doors. They then checked the basement and found an unhurt Fisher, as well as marijuana leaves and plants in plain view.

After finding marijuana but no one injured, the officers exited the house and guarded the front and rear doors while other officers sought a search warrant. After obtaining the search warrant, the officers reentered the house to collect the evidence. They found several items of drug paraphernalia, 930.07 grams of marijuana, a .45 caliber handgun, and $1,500 cash. The State charged Fisher with possession of marijuana with the intent to distribute, unlawful acts with proceeds derived from violation of drug laws, and possession of paraphernalia to use or distribute.

Fisher moved to suppress the evidence, arguing that the evidence resulted from the officers' illegal search of the house. At the hearing, Fisher argued the officers did not comply with the emergency aid exception's requirements because they had failed to ask the women standing outside the house any clarifying questions before entering the house.

3

The State argued that the officers' entry and search of the house was protected under the emergency aid exception to the warrant requirement.

The district court denied Fisher's motion to suppress, finding that "[t]he sole issue [was] whether the officers were lawfully present in the residence." The district court found the officers were responding to a shooting and had no time to investigate if the women were involved in the shooting or to assess their credibility because "the officers had a duty to act and to act fast." The district court ultimately concluded that clearing the house to find if someone was hurt or dying was not unreasonable under the circumstances.

As part of a plea agreement with the State in a separate case, Fisher agreed to a bench trial on stipulated facts if his motion to suppress was denied, with the understanding that he was preserving the issue of suppression for appeal. After finding Fisher guilty based on the stipulated facts, the district court sentenced Fisher to a controlling prison term of 137 months but granted a dispositional departure to probation for 36 months.

Fisher timely appeals.

DID THE DISTRICT COURT ERR BY DENYING FISHER'S MOTION TO SUPPRESS?

Fisher argues the district court erred when it denied his motion to suppress, claiming that the officers lacked a lawful justification to enter the house because they failed to ask the women standing outside any clarifying questions or whether they were injured. The State counters that the emergency aid exception applies because, upon arrival at the house, the officers had an objectively reasonable basis to believe someone was seriously injured inside. Because Fisher concedes that the seized drugs were in plain view of the officers once they entered into the house, the question of whether the district

4

court should have suppressed the evidence turns on whether the officers' entry into the house was constitutionally permissible under the emergency aid exception.

*Standard of Review*

Our standard of review for a motion to suppress is bifurcated.

"The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. But the court's ultimate legal conclusion is reviewed using a de novo standard. The appellate court does not reweigh the evidence or assess the credibility of witnesses. When the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. [Citations omitted.]" *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The State bears the burden to prove the challenged evidence's admissibility. *State v. Guein*, 309 Kan. 1245, 1252, 444 P.3d 340 (2019).

*Analysis*

Under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, "a warrantless entry into a private dwelling by law enforcement officers is considered unreasonable and invalid unless it falls within a recognized exception to the warrant requirement." *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014); see *Brigham City v. Stuart*, 547 U.S. 398, 403-04, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006). "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). As a result, "law enforcement officers may enter a home

without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City*, 547 U.S. at 403.

Kansas recognizes several exceptions to the warrant requirement, including the emergency aid exception. *Neighbors*, 299 Kan. at 239. The State has the burden to prove "that a warrantless entry and the ensuing search and seizure were lawful." 299 Kan. at 240.

In 2014, the Kansas Supreme Court modified its emergency aid exception test to conform with more recent United States Supreme Court decisions:

> "[T]he emergency aid exception [is] a limited exception permitting a warrantless search when: (1) law enforcement officers enter the premises with an objectively reasonable basis to believe someone inside is seriously injured or imminently threatened with serious injury; and (2) the manner and scope of any ensuing search once inside the premises is reasonable." 299 Kan. at 249.

An officer's action is reasonable under the emergency aid exception when the circumstances, viewed objectively, justify the officer's action. "An officer's subjective motivation is irrelevant." *Brigham City*, 547 U.S. at 404; see *United States v. Najar*, 451 F.3d 710, 718-19 (10th Cir. 2006) ("We evaluate whether the officers were confronted with reasonable grounds to believe there was an immediate need 'guided by the realities of the situation presented by the record' from the viewpoint of 'prudent, cautious, and trained officers.'"). The emergency aid exception limits officers to "'do no more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance.'" *Neighbors*, 299 Kan. at 251 (quoting 3 LaFave, Search and Seizure § 6.6[a], p. 622 & n.65).

Fisher does not challenge the second prong of the *Neighbors* test: whether law enforcement acted reasonably once inside the house. Instead, it is the first prong of the

6

*Neighbors* test that is at issue: whether law enforcement had an objectively reasonable basis to believe someone inside was seriously injured. See 299 Kan. at 249. "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 49, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009). Chief Justice (then-Judge) Burger's oft-quoted opinion in *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963), explains well the duty first responders have to act quickly when someone may need medical aid:

> "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. . . . But the business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response."

Law enforcement need not verify the facts of a 911 call because doing so

> "'would dramatically slow emergency response time, and would therefore be at odds with the purpose of the emergency doctrine' . . . . [P]olice will routinely be summoned for matters that are not . . . real emergencies. We will not impose a duty of inquiry on the police to separate a true cry for help from a less deserving call for attention because the delay may cost lives that could have been saved by an immediate police response. The possibility that immediate police action will prevent injury or death outweighs the inconvenience we suffer when the police interrupt our ordinary routines in response to what turns out to be a non-emergency call. [Citation omitted.]" *United States v. Snipe*, 515 F.3d 947, 953-54 (9th Cir. 2008).

Fisher invokes *Neighbors* to support his argument that the emergency no longer existed once the officers arrived and encountered the reporting party outside the house uninjured who did not convey that someone inside the house was injured. We disagree. While *Neighbors* provides the controlling test, it is factually distinguishable principally

7

because law enforcement first entered the home and determined no emergency existed before a search was then unlawfully conducted.

In *Neighbors*, the landlord called 911 after entering an apartment and discovering a man lying unresponsive on the couch. The landlord opened the door for law enforcement. The officers tried to wake Neighbors by shouting, but Neighbors did not move. They then entered the apartment because they were concerned for Neighbors' health. The officers were able to wake Neighbors and then confirmed that Neighbors had permission from the tenant to be in the apartment. Another officer heard Neighbors' name over his police radio and recognized him as a drug offender. That officer drove to the apartment and obtained Neighbors' consent to search his clothes, finding drugs.

The *Neighbors* court held that the officers had the authority under the emergency aid exception to enter the apartment based on the report of an unresponsive man inside on the couch. 299 Kan. at 249. Once the officers woke Neighbors, they corroborated his story that he had permission from the tenant to stay in that apartment. At this point, the emergency was over and "[t]he responding officers were required to leave the apartment once it was clear the occupants did not need medical assistance." 299 Kan. at 253. The emergency had ended when the last officer arrived and conducted the unlawful search of Neighbors' clothes. See *Mincey*, 437 U.S. at 393 (finding emergency aid exception did not apply at time of search because everyone in apartment had been located and circumstances requiring emergency aid no longer existed).

More pertinent to our discussion is the factually similar case of *United States v. Holloway*, 290 F.3d 1331 (11th Cir. 2002). There, police responded to two 911 calls reporting gunshots and arguing from Holloway's house. Law enforcement arrived to find Holloway and his wife on the porch. The officer instructed Holloway and his wife to raise their hands and walk towards his patrol car. After placing Holloway in his patrol car, the officer searched the house for possible victims. The officer found a shotgun on the side of

house. After securing the shotgun, the officer searched the entire house but found no injured people.

In its analysis, the 11th Circuit Court of Appeals in *Holloway* focused on the role that 911 calls play in the emergency aid exception. The officers received two reports from dispatch of gunshots and arguing and, upon their arrival, nothing "dissuaded the officers from believing the veracity of the 911 calls." 290 F.3d at 1338. The presence of Holloway and his wife supported the information from the 911 calls. The court held that "when exigent circumstances demand an immediate response, particularly where there is a danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home." 290 F.3d at 1334. The court held that the search was justified under the emergency aid exception and that "[t]he possibility of a gunshot victim lying prostrate in the dwelling created an exigency necessitating immediate search." 290 F.3d at 1338.

Here, the police responded to a 911 call that someone had been shot. Like *Holloway*, the officers encountered people outside the house. But the mere presence of people outside the house where gunshots were reported did not remove the officers' reasonable basis to search the house for victims. The officers were responding to a report that someone had been shot in the house and did not have time to engage in a detailed inquiry with the two unharmed women outside. The possibility of someone suffering from a gunshot wound inside the house necessitated an immediate search.

"[A]n officer may continue an emergency investigation until assured there is no one inside in need of assistance—particularly when the officer encounters circumstances that continue to raise suspicions." *Neighbors*, 299 Kan. at 251. The information Johnson had was someone had been shot and possibly needed immediate assistance. Johnson could not know for sure the physical state of the injured person without searching the

9

house for that person. Under the emergency aid exception, Johnson had the authority to act until assured that no one needed assistance.

Fisher argues that when the reporting party or resident is literally standing in the driveway when the officers arrive, failing to ask basic clarifying questions results in a loss of any objectively reasonable basis to immediately search the home. Fisher argues that if the purpose in entering a house is to render emergency medical assistance as quickly as possible, asking those clarifying questions is necessary to determine if emergency assistance is required and where in the house it is required.

Here, when responding to a 911 call of someone shot in the house, Johnson or the other officers were not required to stop and double-check with Teresa that someone in the house was hurt. With the benefit of hindsight, had Johnson stopped to ask Teresa some clarifying questions, it is possible he might have learned that no gunshot victim existed and the emergency could have been dispelled. But the law does not require law enforcement to be certain that someone needs emergency aid before searching a house; it only requires police to "reasonably believe that a person within is in need of immediate aid." *Mincey*, 437 U.S. at 392; see *Neighbors*, 299 Kan. at 249.

Gunshot wounds can be—and often are—of a serious nature. Johnson and his fellow officers acted quickly to find the person who needed medical attention. During their search, they discovered Fisher in the basement with marijuana in plain view. The officers possessed an objectively reasonable basis to search the house for a person injured from a gunshot and limited the scope of their search to areas in the house where they might find a person suffering from a gunshot wound. The district court was correct in not suppressing the evidence.

Affirmed.