NOT DESIGNATED FOR PUBLICATION

No. 123,747

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MAURICE DARNELL DAVIS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed October 29, 2021. Affirmed.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.

Before WARNER, P.J., MALONE and BUSER, JJ.

PER CURIAM:  The State brings this interlocutory appeal challenging the district court's order granting Maurice Darnell Davis' motion to suppress evidence. Police officers responded to a dispatch call reporting a domestic battery in progress and entered a residence occupied by Davis without a warrant. The district court found the officers' warrantless entry into the residence violated Davis' rights under the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights, so it suppressed the drug evidence discovered on Davis during a search incident to arrest. Although we disagree with some of the district court's legal analysis, we find the district court properly suppressed the evidence and affirm the district court's judgment.

1

On March 30, 2020, Hutchinson dispatch received an emergency call from a purportedly hysterical juvenile reporting that someone hit her mother. Hutchinson Police Officers Christian Vandergrift and Anthony Garcia responded to the call, which was classified as a battery in progress with children present, at a residence shared by Davis and Samantha Dick. The record does not describe the legal relationship between Davis and Dick, except that they have a child in common and share a residence.

Upon arrival at the residence, Vandergrift said he heard "a lot of commotion going on, coming from the house." It is unclear if the officers knocked before going in but there was no pause before entry. Vandergrift later testified, "I can't say if I actually knocked. It might have been a brief knock and a push at the door at the same time." But Vandergrift believed it was necessary to get inside for the safety of others, so he and Garcia entered the house through an unlocked door and announced themselves. Once inside the house, the officers saw two people having a conversation "not necessarily [in] the calmest of tones but not the most aggressive of tones." Vandergrift identified the individuals as Davis and Dick. Davis asked the officers what they were doing in his house.

The officers separated Davis and Dick. Dick explained the dispute to Vandergrift. She said that Davis accused her of being unfaithful and called her a bitch, so she slapped him. Davis responded by either punching or pushing Dick. Dick showed Vandergrift a fist-sized red mark on her stomach, which later dissipated. She said that Davis continually grabbed her arm and pulled her, causing redness. Vandergrift saw redness on Dick's forearm consistent with a mark from a forceful grab. The officers arrested both Davis and Dick for domestic battery. While searching Davis outside the residence incident to the arrest, another officer found a bag of methamphetamine in his pocket.

The State charged Davis with possession of opiates and domestic battery. Davis moved to suppress the methamphetamine arguing that the officers' warrantless entry into his residence was illegal. The State began the suppression hearing by stating it could not provide the 911 recording and presumed it was destroyed. The State called Vandergrift as the only witness and his direct examination covered five pages of the hearing transcript. Vandergrift began to testify that he was dispatched to the Davis residence for a battery/disturbance, but Davis objected to the testimony as hearsay. The prosecutor stated that evidence of the dispatch call was not being offered to prove the truth of the matter; it was just to explain why the officer was responding to the call. The district court admitted the evidence for that limited purpose. Vandergrift then testified that dispatch stated that a juvenile had reported her mother had been struck by another individual within the house.

Vandergrift next testified about hearing the "commotion" when he arrived at the house and his immediate entry into the house. To further justify his entry, Vandergrift began to explain that he previously had been at the residence. Davis objected to this testimony on the grounds of relevance, and the district court sustained the objection. Thus, Vandergrift was not allowed to testify about any prior contacts at the residence.

On cross-examination, Davis' counsel questioned Vandergrift about the fact that his narrative report mentioned nothing about the officers hearing a commotion when they were outside the house. Davis' counsel also questioned Vandergrift about his bodycam recording not picking up any sounds of a commotion. Davis' counsel asked Vandergrift to describe the commotion that he heard:

> "Q. [Davis' counsel] So can you describe to the Court the commotion that you say you heard?
> "A. [by Vandergrift] Them two [Davis and Dick] talking was able to be heard outside the residence.
> "Q. So they were talking. Do you remember what they were saying?
> "A. I couldn't make out because it [was] unintelligible."

3

Davis' counsel introduced Vandergrift's narrative report into evidence to show that the report mentioned nothing about the officers hearing a commotion when they were outside the house. The report stated that Vandergrift was dispatched to the residence on March 30, 2020, "in reference to a physical domestic [battery] in progress [w]hich was called in by a hysterical female." The report also stated that Vandergrift had contacted Davis and Dick two days earlier "for a similar disturbance."

After taking the matter under advisement, the district court filed a written order with findings of fact and conclusions of law granting Davis' motion to suppress based on the officers' warrantless entry into the residence. The district court found "that under either exigent circumstances or emergency assistance the State has not met the burden to prove the entry was valid." The State timely appealed the suppression order.

DID THE COURT ERR IN GRANTING THE MOTION TO SUPPRESS?

On appeal, the State claims the "[w]arrantless entry into the residence was justified under the emergency aid exception to the warrant requirement." The State cites *State v. Gilbert,* 24 Kan. App. 2d 159, 942 P.2d 660 (1997), in support of its assertion that the entry was lawful. The State contends the officers had an objectively reasonable basis to enter the house without a warrant and they did no more than reasonably necessary to find whether someone needed emergency aid. The State cites the 911 call and the officers' knowledge that children were present as supporting the lawful entry.

Davis argues that the officers did not meet the first prong of the emergency aid test requiring the officers to have an objectively reasonable basis to believe someone inside the residence is seriously injured or imminently threatened with serious injury. Davis contends there was no objectively reasonable basis for the officers to enter the home without a warrant:  officers did not knock or try to talk with anyone; no commotion or loud noise can be heard on the bodycam audio; and upon entry, they found two people

4

conversing. Finally, Davis argues that even if the officers entered lawfully, the need to enter dissipated when they discovered no one needing help.

Before addressing the arguments, we observe a potential preservation problem with the State's claim that the warrantless entry into the residence was justified under the emergency aid exception to the warrant requirement. In district court, the State mainly argued that the officers' warrantless entry into the residence was justified under the probable cause with exigent circumstances exception. But at one point in its closing argument, the State asserted that "officers are trained to respond to those types of batteries in progress *as if there is an emergency going on*."

On appeal, the State mainly argues that the warrantless entry into the residence was justified under the emergency aid exception, although the State's brief conflates the two exceptions and argues them interchangeably. The district court apparently did not believe that the State had argued for the emergency aid exception, as the court stated in its order: "While the State did not assert the emergency assistance doctrine as support for the officer's entry the court finds that under either exigent circumstances or emergency assistance the State has not met its burden to prove the entry was valid." Because the State's closing argument referenced an "emergency" entry into the residence and because the district court addressed both exceptions in its ruling, we find the State's argument under the emergency aid exception to the warrant requirement is preserved for appeal.

Also, as to preservation, the State asserts in the final paragraph of its brief that the methamphetamine found in Davis' pocket "would be subject to inevitable discovery." But the State did not argue in district court that the evidence was admissible under the inevitable discovery rule, so the issue cannot be raised by the State for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). And in any event, the State does not support the point with any argument or legal authority. A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Lowery*, 308

5

Kan. 1183, 1231, 427 P.3d 865 (2018). Finally, the State mentions in the final paragraph of its brief that Davis was lawfully arrested, and the methamphetamine was found during a lawful search of his person incident to his arrest. But the State has never argued in district court or on appeal that the search incident to a lawful arrest serves as an exception to the warrant requirement or that the drug evidence found in Davis' pocket is admissible under the attenuation doctrine. Issues not briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

When reviewing a ruling on a motion to suppress, the appellate court uses a bifurcated standard of review. The appellate court reviews the district court's factual findings to determine whether substantial competent evidence supports the findings; the court reviews legal conclusions drawn from those factual findings de novo. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014).

We begin by examining the text of the applicable constitutional provisions. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "[W]hen it comes to the Fourth Amendment, the home is the first among equals." *Florida v. Jardines*, 569 U.S. 1, 6, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013). The Kansas Supreme Court has held that section 15 of the Kansas Constitution Bill of Rights provides the same protections. *State v. Boggess*, 308 Kan. 821, 825-26, 425 P.3d 324 (2018).

Warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018). The two relevant exceptions here are probable cause with exigent circumstances and emergency aid. *Neighbors*, 299 Kan. at 239. The State bears the burden to prove a warrantless entry and any ensuing search and seizure were lawful. 299 Kan. at 240.

As a preliminary matter, the State asserts in its brief that it challenges the factual basis for the district court's decision. But the only factual issue the State presents is the district court's exclusion of Vandergrift's testimony about prior contacts with Davis and Dick at their residence. The district court excluded the prior contacts on relevance grounds which the State now argues was erroneous. But such a claim is an evidentiary challenge, not a challenge to the district court's factual findings, and the State fails to brief a relevance challenge. Thus, the State does not adequately brief the issue and it is considered waived. *Arnett*, 307 Kan. at 650. Nor did the State proffer into the record Vandergrift's excluded testimony about prior contacts at the residence, so any error in excluding the evidence cannot be a basis for reversal. See K.S.A. 60-405.

Although not argued by the State, we do observe one problem with the district court's factual findings. The district court found that "Vande[r]grift did not describe [the commotion] he heard" coming from the house. But the record reflects that Vandergrift did describe the commotion. He described the commotion as hearing two voices inside the residence without being able to tell what they were saying. Davis does not dispute this testimony which was elicited by his counsel.

*Probable cause with exigent circumstances*

As stated earlier, the State's brief argues the probable cause with exigent circumstances exception interchangeably with the emergency aid exception. But the State relies mainly on *Gilbert* to support the officers' warrantless entry into the residence in a domestic violence situation. In *Gilbert*, officers responded to a report of domestic violence called in by an upset, worried, and nervous neighbor. The neighbor reported that Gilbert hit both her and Ms. Gilbert. Upon arrival at the Gilbert's trailer residence, the officers noted several signs of disturbance. There were recently broken beer bottles in the street and driveway, an overturned dumpster, and a broken window in the trailer.

When the officers contacted Ms. Gilbert, she was upset and had been crying. Ms. Gilbert told the officers that Mr. Gilbert was not at home and she did not want the officers to enter her home. Based on the neighbor's report, the scene around the outside of the trailer, and Ms. Gilbert's reaction and demeanor, the officers concluded this was most likely a domestic violence situation and they needed to do a welfare check. The officers entered the trailer without a warrant or consent. In searching the trailer for Gilbert, the officers found marijuana plants. Officers obtained a search warrant and called in the drug task force. Gilbert moved to suppress the evidence based on an unlawful search, and the district court granted the motion.

On appeal, this court held that a report of domestic violence does not per se establish exigent circumstances; but based on the facts and circumstances, the officers were justified in entering Gilbert's residence and conducting a warrantless search. 24 Kan. App. 2d at 167-68. Based on the totality of the circumstances, this court found the officers had probable cause to believe a battery had occurred and exigent circumstances existed to justify the officers' warrantless entry. 24 Kan. App. 2d at 167-68.

*Gilbert* is distinguishable from Davis' case. In *Gilbert*, the officers observed signs of a disturbance when they approached the residence:  recently broken beer bottles in the street and driveway, an overturned dumpster, and a broken window in the trailer. Here, the officers observed no signs of a disturbance at the residence other than Vandergrift hearing a "commotion" that he described as voices inside the house without being able to tell what they were saying. More importantly, in *Gilbert* the officers talked to Ms. Gilbert and observed that she was upset and had been crying. Here, the officers entered the residence without knocking and without speaking with anyone at the scene.

Even if we find this court's reasoning in *Gilbert* to be sound, we do not find the officers' warrantless entry into Davis' residence to be supported by probable cause with exigent circumstances. This exception has two elements:  probable cause and exigent

8

circumstances. Probable cause for an arrest exists when the totality of the facts and circumstances warrant a person of reasonable caution to believe that an offense has been or is being committed. *State v. Hadley*, 55 Kan. App. 2d 141, 149, 410 P.3d 140 (2017). In the context of a search and seizure, probable cause is the reasonable belief that there is a fair probability that the place to be searched contains contraband or evidence of a crime. 55 Kan. App. 2d at 149-50. Probable cause is an objective standard and an officer's subjective intentions play no role in probable cause analysis. *State v. Thompson*, 284 Kan. 763, 805, 166 P.3d 1015 (2007).

Probable cause may be coupled with an exigent circumstance requiring immediate law enforcement intervention. Factors to be considered in determining whether exigent circumstances exist include (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) strong reasons to believe that the suspect is in the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry. The possible loss or destruction of evidence is another factor to be considered. *State v. Platten*, 225 Kan. 764, 770, 594 P.2d 201 (1979).

The probable cause with exigent circumstances exception is applied when law enforcement officers have probable cause to arrest a person or to search a location but because of exigent circumstances, the officers do not have time to obtain a warrant. As applied to Davis' case, there may have been exigent circumstances involved with the report of a domestic battery in progress with children present. But the element that is lacking here is that when the officers approached Davis' residence, they had no probable cause at that moment to arrest Davis for domestic battery or to search the residence for evidence of a crime. The only information the officers possessed was from the dispatch call, and the officers detected no signs of disturbance other than hearing unintelligible voices inside the residence. Notably, the dispatch call did not even identify the persons

involved in the reported battery. No magistrate would have found probable cause to issue an arrest warrant or a search warrant under these circumstances without more evidence.

At the suppression hearing, Vandergrift began to testify that he had prior contacts with Davis and Dick, but the district court sustained Davis' objection to the testimony and Vandergrift could not testify about prior contacts. But Davis introduced Vandergrift's narrative report into evidence to show that the report mentioned nothing about the officers hearing a commotion when they were outside the house. The report stated that Vandergrift had been at the residence two days earlier "for a similar disturbance." It also stated that after Vandergrift was inside the residence, he overheard Dick's daughter tell Dick that "she was afraid to be in her own home. I believe this is due to the presence of [Davis] in the household and his aggressive nature towards [Dick] during arguments."

The statements in Vandergrift's narrative report, without testimony to develop any details, do not provide probable cause for the warrantless entry into the residence even when considered with the other evidence the State presented. We do not know the details of any information Vandergrift acquired in his prior contacts at the residence or whether anyone was arrested in a prior contact. Vandergrift did not overhear the daughter say anything until after he was inside the residence, so that evidence does not support probable cause for the warrantless entry. Vandergrift's subjective belief that the daughter was afraid to be in her own home because of Davis' presence in the household and his aggressive nature towards Dick does not factor into the probable cause analysis. *Thompson*, 284 Kan. at 805. The isolated statements in the narrative report without elaboration simply cannot be transformed into objective evidence supporting probable cause for the warrantless entry into the residence.

In both district court and on appeal, Davis makes much of the evidence that Vandergrift did not mention any commotion in his narrative report and his bodycam recording did not pick up any sounds of a commotion. But we find this evidence has little

10

probative value in the probable cause analysis. At the close of the evidence at the suppression hearing, the district judge stated that she assumed Vandergrift was acting strictly out of concern for any possible danger, meaning the court found Vandergrift's testimony credible about whether he heard a commotion. What is more important is that Vandergrift described the commotion in his testimony as hearing two voices inside the residence without being able to tell what they were saying.

The district court's written ruling stated: "Evidence in the form of the actual 911 call or the officer's description of what he heard upon arrival might have supported a reasonable conclusion that immediate entry was necessary." We disagree with the district court's conclusion that the 911 recording would have helped the State meet its burden. The district court found from Vandergrift's narrative report that he was dispatched "in reference to a physical domestic [battery] in progress [w]hich was called in by a hysterical juvenile female." Thus, having the 911 recording admitted into evidence would have been cumulative to the description of the call in the narrative report. And as we stated before, the district court erroneously found that Vandergrift did not describe the commotion that he heard when, in fact, he described the commotion as hearing voices inside the residence without being able to tell what they were saying.

In sum, we find that one of the district court's factual findings was not supported by the evidence, and we also disagree with some of the district court's legal analysis. But whether the officers had probable cause to enter Davis' residence without a warrant based on the evidence in the record is ultimately a legal conclusion that we review de novo. *Neighbors*, 299 Kan. at 240. Based on the totality of the evidence presented at the hearing, we conclude the officers lacked probable cause to arrest Davis for any crime or to search Davis' residence before the officers entered the home without a warrant. As a result, we find the district court did not err in reaching its legal conclusion that the warrantless entry into Davis' residence was not justified under the probable cause with exigent circumstances exception. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516

11

(2015) (finding that district court's decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision).

*Emergency aid exception*

The emergency aid exception allows law enforcement officers to make a limited entry into a premise without a warrant when a sufficient emergency exists even without probable cause that a crime has been committed. The seminal case in Kansas discussing the emergency aid exception is *Neighbors*. In that case, a landlord called 911 after entering an apartment and discovering a man he did not recognize lying unresponsive on the couch. Law enforcement officers entered the apartment and eventually were able to wake the man, later identified as Neighbors. After resolving that Neighbors did not need emergency medical assistance, officers began searching other rooms in the apartment and found a woman in a bedroom. Meanwhile, another officer heard Neighbor's name on his police radio and recognized him as a drug offender. That officer drove to the apartment and obtained Neighbor's consent to search his clothes, finding drugs.

Our Supreme Court ultimately suppressed the evidence, finding that the officers' initial entry into the apartment was justified under the emergency aid exception but that the officers exceeded the permissible scope of their warrantless entry. 299 Kan. at 235. In its decision, the court reviewed the history of the emergency aid exception in both United States Supreme Court and Kansas cases. The *Neighbors* court refined the prior test for applying the emergency aid exception in Kansas and held the exception permits a warrantless search when: (1) law enforcement officers enter the premises with an objectively reasonable basis to believe someone inside is seriously injured or imminently threatened with serious injury; and (2) the manner and scope of any ensuing search once inside the premises is reasonable. 299 Kan. at 249.

12

As for the first prong of the test, the *Neighbors* court found the "officers knew an unresponsive male was seen lying on the couch and could not be awakened by yelling or pounding on the front door. This was sufficient to establish an objectively reasonable basis to believe someone inside the apartment could be seriously injured." 299 Kan. at 249. We are unaware of any later Kansas Supreme Court cases that have analyzed the first prong of the test as to what constitutes an objectively reasonable basis for an officer to believe someone is seriously injured or imminently threatened with serious injury, but our court has addressed the first prong of the test in two recently published decisions.

In *State v. Fisher*, 57 Kan. App. 2d 460, 453 P.3d 359 (2019), an officer was dispatched to a house after a 911 call reported that someone had been shot at that address. This court noted that an officer's action is reasonable under the emergency aid exception when the circumstances, viewed objectively, justify the officer's actions and that an officer's subjective motivation is irrelevant. 57 Kan. App. 2d at 464. As for the first prong of the exception, this court stated that officers do not need ironclad proof of a serious life-threatening injury to invoke the emergency aid exception. 57 Kan. App. 2d at 464. But this court found that the first prong of the exception was satisfied, observing that "[g]unshot wounds can be—and often are—of a serious nature." 57 Kan. App. 2d at 467.

In *State v. Smith*, 59 Kan. App. 2d 28, 476 P.3d 847 (2020), officers were dispatched to check on a woman, later identified as Smith, who had apparently fallen asleep in her car parked in someone else's driveway. After failing to rouse Smith, the officers removed her from the car, but she remained largely unresponsive and appeared to be suffering from an overdose. When emergency personnel arrived at the scene, an officer searched Smith's purse, looking for her identification and any information about substances she may have ingested. Under these circumstances, this court found that the officer's belief that Smith's life or safety was in immediate danger because of a potential overdose was objectively reasonable, satisfying the first prong of the emergency aid exception and upholding the search of Smith's purse. 59 Kan. App. 2d at 36-38.

13

*Neighbors*, *Fisher*, and *Smith* present facts where law enforcement officers responded to a report of someone being shot inside a house or someone being found unconscious who could not be awakened. We do not have facts like that here. Had dispatch reported that someone had been shot inside Davis' residence, the dispatch call alone would justify a warrantless entry under the emergency aid exception. Had the officers observed an unconscious person through a window at Davis' residence who could not be awakened by banging on the door, the officers could make a warrantless entry under the emergency aid exception. But these are not our facts.

The dissent cites *Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006), as being the "most relevant, on-point, and persuasive precedent in support of Officer Vandergrift's emergency entry." Slip op. at 20. In that case, four police officers responded at 3 a.m. to a call about a loud house party. Upon arrival, officers saw two juveniles drinking beer in the backyard and four adults trying to restrain another juvenile by pressing him against a refrigerator. When the juvenile broke free, he punched one of the adults, who had to spit up blood in a nearby sink. The officers announced their presence, but the occupants did not hear them. The officers made a warrantless entry resulting in several arrests. The defendants sought to suppress all evidence obtained after the officers entered the home, arguing the warrantless entry violated the Fourth Amendment. The United States Supreme Court ultimately upheld the warrantless entry finding that "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. '"The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."' [Citation omitted.]" 547 U.S. at 403.

*Brigham City* is distinguishable and provides little support for Vandergrift's warrantless entry into Davis' residence. The officers in *Brigham City* observed a fight in progress and watched it escalate. They tried to make their presence known but could not be heard over the fracas. Vandergrift and his fellow officer did not observe any fighting

14

or hear any sounds that a reasonable person would associate with a fight in progress. And they made no attempt to announce their presence at the scene before entering the residence. Had Vandergrift observed a fight in progress, as the officers observed in *Brigham City*, then he would have been authorized by Kansas law to enter the residence and make an arrest without a warrant. See K.S.A. 22-2401(d).

The dissent concludes that "Vandergrift had an objectively reasonable basis to believe a mother in the company of children was seriously injured or imminently threatened with serious injury by her male partner with a known history of domestic violence." Slip op. at 24. But the dissent strains to draw this conclusion from the evidence presented in district court. At the suppression hearing, Vandergrift offered little testimony to support his warrantless entry into the residence. What Vandergrift called a "commotion" was the sound of two unintelligible voices inside the house. The narrative report, offered into evidence by defense counsel, referred to a "similar disturbance" at the residence two days earlier, but Vandergrift was not allowed to provide any information about the prior incident including whether anyone was injured or arrested. The narrative report also includes a statement of Vandergrift's subjective belief that Dick's daughter was afraid "due to the presence of [Davis] in the household and his aggressive nature towards [Dick] during arguments." But with no testimony to explain the reason for Vandergrift's subjective opinion, this isolated statement in the narrative report does not amount to objective evidence justifying the warrantless entry. The State bears the burden to establish an exception to the warrant requirement. *Neighbors*, 299 Kan. at 240.

Whether the first prong of the emergency aid exception has been satisfied is fact-specific and must be addressed on a case-by-case basis. What we have here is a dispatch call of a domestic battery in progress with children present. There was a "similar disturbance" at the residence two days earlier. Upon arrival, the officers detected no signs of disturbance other than hearing unintelligible voices inside the residence. Does this evidence support a warrantless entry into the residence under the emergency aid

15

exception? We believe the answer is no. Officers do not need ironclad proof of a serious life-threatening injury to invoke the emergency aid exception. But here the officers had no evidence of anyone inside the residence who needed emergency medical treatment.

All domestic violence reports involve potential physical danger not only for the victims and their families, but for the law enforcement officers who are called to investigate the possible crime. But justifying a warrantless entry with these facts under the emergency aid exception would open the door to a warrantless entry in all domestic violence calls. Under the facts here, it would have been more prudent for the officers to knock on the door to try to speak with someone inside the house to learn if the information in the dispatch call was correct. The officers may well have developed probable cause for an arrest or justified entry into the home had they tried to investigate the facts before rushing into the premises without a warrant.

In sum, the evidence here does not support an objectively reasonable belief by the officers that someone inside Davis' residence was seriously injured or imminently threatened with serious injury to satisfy the first prong of the emergency aid exception to the warrant requirement. As a result, we need not address the second prong of the exception. We find the district court did not err in reaching its legal conclusion that the warrantless entry into Davis' residence was not justified under the emergency aid exception. Because the State failed to prove any exceptions authorizing the officers' warrantless entry into Davis' residence, and because the State has offered no other arguments why the drugs found in Davis' pocket was admissible evidence, we conclude the district court did not err in granting Davis' motion to suppress.

Affirmed.

BUSER, J., dissenting:  I dissent. Officer Christian Vandergrift is a Hutchinson Police Officer with three-and-a-half-year's law enforcement experience. At the time Officer Vandergrift entered the Davis residence without a warrant he knew the following facts:

- The dispatcher had directed him to the residence "in response to a juvenile reporting her mother had been struck by another individual within the house" and this physical altercation was "in progress" and called in by a "hysterical juvenile female." Officer Vandergrift also referred to this as a reported "battery/disturbance" and "physical domestic in progress." The officer also knew that two children lived in the residence.

- Officer Vandergrift "made contact with both [Dick] and [Davis on] 03.28.2020 for a similar disturbance." The prior domestic disturbance involving the couple occurred only two days before the officer's warrantless entry in this case based upon the 911 report of an on-going domestic disturbance.

- Officer Vandergrift knew that Davis had an "aggressive nature towards [Dick] during arguments" which occurred at the residence.

- Upon approaching the door, "[t]here was a lot of commotion going on, coming from the house," and Officer Vandergrift knew that Davis and Dick were angry at one another.

- According to Officer Vandergrift, "With the nature of the call, someone being battered in progress and hearing commotion coming from the house, we believed it was necessary for us to get inside for the safety of others."

Given Officer Vandergrift's testimony that his intent upon entering the residence was "for us to get inside for the safety of others," the State's primary focus on the emergency aid exception on appeal, and the district court's ruling that the emergency aid exception did not apply because "this situation falls in the category of a reported domestic battery which does not per se create exigent circumstances," I will limit my analysis to the emergency aid exception.

At the outset, I agree with my colleagues that the emergency aid exception, as clarified by our Supreme Court, permits a warrantless entry into a premises when: (1) law enforcement officers enter the premises with an objectively reasonable basis to believe someone inside is seriously injured or imminently threatened with serious injury; and (2) the manner and scope of any ensuing search once inside the premises is reasonable. *State v. Neighbors*, 299 Kan. 234, 249, 328 P.3d 1081 (2014).

The second prong of this test is not at issue in this case because there is no evidence that either responding officer searched the home after their emergency entry. Shortly after Officer Vandergrift entered the residence he promptly left, took Davis outside, and arrested him prior to the search incident to his arrest for domestic battery. This search yielded the methamphetamine. I would submit that in this case the officers' conduct in not searching the residence upon entry was in faithful adherence to Fourth Amendment principles, and supportive of the officer's testimony that his sole purpose in entering the residence was simply to render aid. The district judge acknowledged this testimony when she commented, "I'm assuming the officer was acting strictly out of concern for who might be inside or who might be in danger."

18

I agree with my colleagues that *Neighbors* is the "seminal case in Kansas discussing the emergency aid exception." Slip op. at 12. But *Neighbors*, involving an unconscious and unresponsive man found in an apartment by a landlord who entered the apartment and then contacted police, has no factual similarity to the case on appeal. Neither does another case cited by the majority, *State v. Smith*, 59 Kan. App. 2d 28, 476 P.3d 847 (2020), wherein an unresponsive woman believed to be suffering from a drug overdose was observed in her car, which the police entered in order to render medical assistance.

A third case cited by the majority, *State v. Fisher*, 57 Kan. App. 2d 460, 453 P.3d 359 (2019), however, is factually similar and supports a finding of an emergency aid exception in the case on appeal. As recounted by our court:

> "Officer Brian Johnson was dispatched to a house based on a 911 call. The female caller, who identified herself as Teresa, reported that someone had been shot at that address. When Johnson arrived, he saw two women arguing with a man on the street in front of the house. The man ran away from the officers. While other officers chased after the man, Johnson approached the house. Johnson did not see anyone injured outside and stopped to ask the women if either were hurt. Neither was injured. Johnson later learned one of the women, named Teresa, was the 911 caller. Johnson and another officer entered the house to search for anyone injured inside. The officers checked upstairs and found two locked bedroom doors. They then checked the basement and found an unhurt Fisher, as well as marijuana leaves and plants in plain view." 57 Kan. App. 2d at 461.

Like the case on appeal, the officers in *Fisher* responded to the residence based on a 911 call and entered the home to see if anyone was hurt. Moreover, prior to entry, the officers did not see anyone injured and the two women outside the residence specifically advised they were not hurt. Unlike the case on appeal, the officers in *Fisher* entered the residence without any indication of an on-going angry disturbance, the presence of

19

children inside the premises, or that the suspect had a history of aggressiveness towards his partner that—two days earlier—had resulted in a domestic disturbance.

In validating the warrantless entry based on the emergency aid exception, our court in *Fisher* ruled "the law does not require law enforcement to be certain that someone needs emergency aid before searching a house; it only requires police to "'reasonably believe that a person within is in need of immediate aid.'" 57 Kan. App. 2d at 467 (quoting *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290 [1978]). Quite simply, *Fisher* provides support for upholding the emergency aid exception in the case on appeal.

The most relevant, on-point, and persuasive precedent in support of Officer Vandergrift's emergency aid entry, however, is found in the United States Supreme Court case of *Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006). This is because in *Neighbors*, our Kansas Supreme Court relied on the *Brigham City* precedent to "realign" Kansas caselaw regarding the emergency aid exception. *Neighbors*, 299 Kan. at 235.

As the Kansas Supreme Court in *Neighbors* recounted the facts of *Brigham City*:

"In *Brigham City*, 547 U.S. 398, four police officers responded at 3 a.m. to a call about a loud house party. Upon arrival, officers saw two juveniles drinking beer in the backyard and four adults attempting to restrain another juvenile by pressing him against a refrigerator with enough force that the refrigerator began sliding across the floor. When the juvenile broke free, he punched one of the adults, who had to spit up blood in a nearby sink. The officers announced their presence, but the occupants did not hear them. The officers then made a warrantless entry resulting in an arrest. Defendant sought to suppress all evidence obtained after the officers entered the home, arguing the warrantless entry violated the Fourth Amendment." *Neighbors*, 299 Kan. at 243.

Of note, some of the partiers were charged with simply contributing to the delinquency of a minor, disorderly conduct, and intoxication. *Brigham City*, 547 U.S. at 401.

In *Neighbors*, our Supreme Court adopted the rule and rationale of the United States Supreme Court in *Brigham City*:

> "The [*Brigham City*] Court upheld the warrantless entry in a unanimous decision, stating: 'One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury.' 547 U.S. at 403. Quoting *Mincey*, 437 U.S. at 392, and *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963), the Court held: "'"The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency."'" *Neighbors*, 299 Kan. at 243.

*Brigham City* shares some factual similarities and dissimilarities with the case on appeal. Considered in totality, these facts support the propriety of Officer Vandergrift's warrantless entry in this case. In both cases, police officers were responding to a call. In *Brigham City* the call was simply a complaint about a loud party. In the case at bar, however, the 911 call was from a hysterical child inside the residence who was witnessing her mother being struck during an ongoing domestic disturbance. In both cases, arriving officers were either informed about or witnessed a battery in progress. There was no indication that anyone was seriously injured although in both cases officers had information that the disturbance was in progress. Although the officers in *Brigham City* knew that the battery resulted in the victim spitting blood, the officers in the case on appeal did not know the extent of the mother's injuries from the battery.

Finally, unlike the case on appeal, the officers in Fisher entered the residence without any prior knowledge of the assailant's history of aggressiveness towards another or any recent disturbance at the residence. Here, as memorialized in Officer Vandergrift's case report, prior to entry into the home he knew that Davis had an "aggressive nature

21

towards [Dick]" and that only two days previously he had "made contact with both [Dick] and [Davis] . . . for a similar disturbance."

The majority claims this dissent "strains to draw" a conclusion of exigent circumstances based on the evidence. Slip op. at 15. My colleagues downplay the significance of Officer Vandergrift's personal knowledge that two days prior to the incident on appeal, he encountered Dick and Davis on a "similar disturbance." But our Supreme Court has upheld a warrantless entry into a residence to render emergency aid, in part, because "[t]he officers knew that there was a prior history of domestic violence." *State v. Drennan*, 278 Kan. 704, 721, 101 P.3d 1218 (2004).

The majority places little importance on Officer Vandergrift's account stated in his narrative report that after the officers entered the residence and maintained order, "[w]hile [Dick] was speaking with her children I overheard one of her daughters, . . . tell her that she was afraid to be in her own home. I believe this is due to the presence of [Davis] in the household and his aggressive nature towards [Dick] during arguments." My colleagues assert that Officer Vandergrift did not testify about the factual basis for his knowledge of Davis' belligerent proclivities. But a reasonable inference is that Officer Vandergrift's knowledge of Davis' combative tendencies during domestic arguments with Dick was derived from his prior contact with the two of them during a domestic disturbance only two days previously.

My colleagues downplay the seriousness of the situation which confronted Officer Vandergrift. They point out, "here the officers had no evidence of anyone inside the residence who needed emergency medical treatment." Slip op. at 16. My colleagues also state that "justifying a warrantless entry with these facts under the emergency aid exception would open the door to a warrantless entry in all domestic violence calls." Slip op. at 16. They suggest that an emergency aid warrantless entry is ordinarily limited to

22

circumstances wherein someone is reported to have been shot or found unconscious and/or the officer sees the injured person in plain view from outside the premises.

My colleagues set too high a bar that a law enforcement officer must meet to lawfully enter a residence without a warrant based on the emergency aid exception. As the First Circuit Court of Appeals has observed:

"Evidence of extreme danger in the form of shots fired, screaming, or blood is not required for there to be some reason to believe that a safety risk exists. See *Tierney v. Davidson*, 133 P.3d 189, 198 (2d Cir. 1998) ('[T]he absence of blood, overturned furniture or other signs of tumult' did not render the officer's belief that danger existed unreasonable and did not require the officer 'to withdraw and go about other business, or stand watch outside the premises listening for the sounds of splintering furniture.' [Citation omitted.]" *Fletcher v. Town of Clinton*, 196 F.3d 41, 49 (1st Cir. 1999).

I will spare the reader a string citation of murder, aggravated battery, aggravated assault, and sexual assault cases that began as ordinary domestic disturbances but, without prompt police intervention, quickly escalated into something much more serious. Indeed, as described by the majority, prior to the officers' entry, Dick was struck in the stomach which left a noticeable fist-sized red mark, and she reported that Davis grabbed her arm and pulled her, which left a red mark "from a forceful grab." Slip op. at 2. We can only speculate about what may have occurred without the young daughter's 911 call and the officers' warrantless entry.

Moreover, to restrain a law enforcement officer confronted with an emergency from making a warrantless entry into a residence in order to render aid or quell a disturbance—as was the situation which confronted Officer Vandergrift—is not consonant with the Fourth Amendment as interpreted by the Kansas Supreme Court or the United States Supreme Court. The United States Supreme Court in *Brigham City* said it best:

23

"In these circumstances, the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning. Nothing in the Fourth Amendment required them to wait until another blow rendered someone 'unconscious' or 'semi-conscious' or worse before entering. *The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties*." (Emphasis added.) 547 U.S. at 406.

Upon entry into the Davis residence, Officer Vandergrift had an objectively reasonable basis to believe a mother in the company of children was seriously injured or imminently threatened with serious injury by her male partner with a known history of domestic violence. Given the totality of circumstances based on these facts, I believe the district court erred as a matter of law in concluding that the officer violated the Fourth Amendment. I would reverse the district court's order suppressing the methamphetamine and remand for further proceedings.