No. 121,619

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRITTANY R. SMITH,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights, warrantless searches and seizures by law enforcement officers are deemed unreasonable and invalid unless a recognized exception to the warrant requirement applies.

2.

Kansas courts have recognized a limited exception to the Fourth Amendment's prohibition of warrantless searches when a law enforcement officer is aiding a person who is seriously injured or seriously threatened with injury. Under certain circumstances, this emergency-aid exception to the warrant requirement permits not only a search of a residence but also a search of personal belongings.

3.

The emergency-aid exception applies when (1) law enforcement officers have an objectively reasonable basis to believe someone is seriously injured or imminently threatened with serious injury and (2) the manner and scope of any ensuing search is reasonable.

4.

The emergency-aid exception is limited in time and scope. Under this limited authority, an officer may take reasonable steps to determine whether someone needs assistance and to provide that assistance. This authority ends when the emergent need dissipates—when it is no longer reasonable to believe a person needs emergency assistance.

5.

There is no bright-line demarcation that defines when an officer's limited authority to conduct a warrantless search under the emergency-aid exception ends. Instead, the touchstone of a court's analysis is reasonableness: whether officers reasonably believe the search is necessary to provide emergency assistance and whether the search itself is reasonable in manner and scope.

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed October 23, 2020. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.

WARNER, J.: The Fourth Amendment to the United States Constitution protects our right to be free from unreasonable searches. In general, this means that law enforcement officers must obtain a warrant before initiating a search of a person or property. But in some instances, other considerations—such as the need to provide emergency assistance to someone who has an immediate and serious medical condition—justifies a warrantless search. This case presents such an instance.

2

Brittany Smith appeals her convictions of possession of methamphetamine, possession of paraphernalia, and driving under the influence, claiming the district court should have suppressed evidence obtained when police officers searched her purse without a warrant. That search occurred after the officers found Smith unresponsive in a running car parked in someone else's driveway. After failing to rouse Smith, the officers removed her from the car, but she remained largely unresponsive and appeared to be suffering an overdose. When emergency medical personnel arrived at the scene, the officers searched Smith's purse, looking for her identification and any information regarding substances she may have ingested. Under these circumstances, we—like the district court—conclude the scope of the officers' warrantless search was reasonable and confined to assist in addressing Smith's medical emergency. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of February 18, 2018, two officers from the Hutchinson Police Department—Officer Hannah Brown and Sergeant Eric Buller—went to check on a woman who had apparently fallen asleep in her car. The sleeping woman, later identified as Smith, had been delivering the local paper when she backed into a residential driveway; a concerned neighbor called the police after Smith remained in the running car for 45 minutes, hunched over behind the wheel.

The officers approached the vehicle and began knocking on the slightly cracked driver's side window, attempting to wake Smith. When Smith did not rouse, Officer Brown said, "I'm gonna open the door. She's not responding." The officers continued to bang on the window for several minutes, but Smith remained unresponsive. Upon seeing paperwork on top of a bundle of newspapers with the name "Brittany Smith" on it, Officer Brown called dispatch and attempted to confirm Smith's identity; she stated "Brittany Smith is the paper carrier listed for this route" and then asked dispatch to "locate anything in house for a Brittany Smith." Dispatch informed Officer Brown that

3

there were two Brittany Smiths in the system with similar dates of birth, heights, weights, and physical descriptions.

While Officer Brown spoke to dispatch, Sergeant Buller unsuccessfully attempted to pull down the driver's side window but managed to widen the opening. The officers then attempted to use a lockout kit—essentially a stick with a hook—to open the car door. Sergeant Buller poked Smith in the head with the lockout tool numerous times, but she remained unresponsive. Another officer told Officer Brown over the radio that he was familiar with a Brittany Smith who had a history of opioid use, so the officers decided to call EMS, concerned that Smith was potentially overdosing. At that time, Officer Brown was still not "100 percent" certain about which Brittany Smith she was dealing with.

The officers were eventually able to get the car door open with the lockout tool. When the door opened, Smith slumped forward and Officer Brown pulled her up by her hoodie; Smith put her hands to her face and gradually began to wake up, but she remained unresponsive and continued to cover her face. Hutchinson firefighters and paramedics soon arrived and began to provide Smith with emergency medical care. Officer Brown asked her if her name was "Brittany Smith"; Smith nodded in response, but Officer Brown was still unsure which Brittany Smith she was.

As the emergency medical personnel took over, Officer Brown stated she was "familiar with [Smith]" and mentioned the possibility that Smith was overdosing on opioids. Officer Brown then briefly patted Smith down to check for any needles; Smith remained confused and largely unresponsive as she mumbled short, incoherent responses to questions from Officer Brown and EMS.

As the firefighters and paramedics were caring for Smith, Officer Brown stated, "Where's her purse? I'm gonna try to find her ID." Officer Brown then asked Smith for consent to search her purse to confirm her identity and "[t]o make sure she was treated

4

correctly [by EMS] and make sure she—it was her." At this point, Officer Brown had confirmed Smith's birthday with dispatch prior to searching the purse and "had a strong idea of who she was." Officer Brown later testified that the main reason she searched the purse was to look for Smith's identification. But Officer Brown also stated she was looking for prescriptions in Smith's purse, trying to help inform EMS about what Smith might have overdosed on.

When looking through Smith's purse, Officer Brown found prescription and non-prescription medications and a pipe covered with "crystal-like residue and burnt residue." Smith's identity was confirmed via the prescription medications, but Officer Brown never found her driver's license. By the time Officer Brown finished the search of the purse, Smith had been loaded in the ambulance.

After Smith headed to the hospital in the ambulance, Officer Brown began searching Smith's car, looking "[f]or identification and any substance, prescriptions, nonprescription that she might have ODd on." Officer Brown found a spoon with a cotton ball and residue on it under the car's radio. The officer then went to speak to Smith at the hospital, advised her of her *Miranda* rights, and interviewed her about the drugs and paraphernalia found in the purse and car.

The State charged Smith with one count of possession of methamphetamine, one count of possession of paraphernalia, and one count of driving under the influence. Smith filed a motion to suppress the evidence seized from her purse and car, arguing that the officers' continued search of her vehicle and purse was unlawful because she was too intoxicated to consent to the search and that the search was not justified as part of the officer's efforts to provide her with emergency aid. Smith also moved to suppress the statements she made at the hospital, contending she was too intoxicated to knowingly and voluntarily waive her *Miranda* rights.

The court suppressed the evidence seized from Smith's car and elicited from her statements in the hospital. But it denied Smith's motion with regard to the evidence found in her purse, explaining:

"The officers had been given the information that Ms. Smith had arrived recently, so apparently had parked in a driveway and was definitely incapacitated and she was in an operable vehicle and that triggers the public safety exception, not only for herself, but the rest of the public. . . . I'm not questioning at the preliminary the officer testified she looked only for I.D. but today she testified that she was looking in the purse for prescriptions also, and it is reasonable to me in the course of a safety stop to find something that might help the hospital treat Ms. Smith, because she definitely needed treatment. And so assuming the officer was also looking for evidence of prescriptions, or whatever Ms. Smith had consumed, if she had, to me the purse search is valid."

Smith's case proceeded to a bench trial on stipulated facts. She was convicted of all charges. Because of Smith's participation in drug treatment and her recent progress in refraining from drug use, the district court granted Smith a departure sentence, suspending the 30-month controlling sentence and imposing 12 months' probation. Smith now appeals.

## DISCUSSION

On appeal, Smith renews her arguments from her motion to suppress, claiming Officer Brown's search of her purse after emergency medical personnel arrived at the scene was unlawful. Smith argues that the evidence obtained from search should have been excluded and urges this court to remand the case for a new trial without the pipe and methamphetamine found in her purse.

We review the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de novo. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). When, as here, the

6

material facts are not in dispute, the constitutionality of a search is a question of law over which our review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57-58, 321 P.3d 754 (2014). Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress the evidence in question, the State has the burden to prove any challenged police conduct was permissible. K.S.A. 22-3216(2); *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010). Under both the Fourth Amendment and section 15, warrantless searches and seizures by law enforcement officers are deemed unreasonable and invalid unless a recognized exception to the warrant requirement applies. *Doelz*, 309 Kan. at 140.

Relevant here, Kansas courts have recognized a limited exception to the Fourth Amendment's prohibition of warrantless searches when a law enforcement officer is aiding a person who is "seriously injured or imminently threatened with injury." *State v. Neighbors*, 299 Kan. 234, 248, 328 P.3d 1081 (2014). In *Neighbors*, our Kansas Supreme Court analyzed the contours of this emergency-aid exception in the context of determining when officers could enter a person's residence without a warrant. Adopting the United States Supreme Court's rationale in *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), *Neighbors* found that the emergency-aid exception applies when "(1) law enforcement officers enter the premises with an objectively reasonable basis to believe someone inside is seriously injured or imminently threatened with serious injury; and (2) the manner and scope of any ensuing search once inside the premises is reasonable." 299 Kan. at 249.

*Neighbors* explained that the emergency-aid exception to the warrant requirement "gives an officer limited authority to 'do no more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance.'" 299 Kan. at 251 (quoting 3 LaFave, Search and Seizure § 6.6[a], p. 622 & n.65). Thus, when entering a residence, as the officers did in *Neighbors*, an officer is "limited in the areas of the premises that can be searched" to places where the person needing assistance may be found. 299 Kan. at 251-52. And "the right of entry dissipates once an officer confirms no one needs assistance or the assistance has been provided." 299 Kan. at 252. As these considerations indicate, the primary test in determining whether the emergency-aid exception applies is whether the officers reasonably believe that a person in the searched area needs emergency assistance. See *Mincey*, 437 U.S. at 392.

Typically, courts discuss the emergency-aid exception in cases that involve a "trespass investigation"—police entering a person's home in response to an emergency inside. See, e.g., *Neighbors*, 299 Kan. at 250-53. This case does not involve such facts. But the district court found that the reasoning behind that exception was equally applicable to Officer Brown's search of Smith's purse due to her medical emergency. Other jurisdictions, citing *Mincey*, have recognized a medical-emergency exception justifying a warrantless search of a person's purse or wallet when that person is found in an unconscious or semi-conscious condition. See, e.g., *People v. Wright*, 804 P.2d 866, 870 (Colo. 1991) (finding the exception applied when there is "a real and immediate danger to the life or safety of another" and "the officer's purpose in conducting the search [is] to render aid or assistance to the endangered person").

Although Kansas courts have not previously applied the emergency-aid exception in this context, the Kansas Supreme Court peripherally discussed the matter in *State v. Evans*, 308 Kan. 1422, 430 P.3d 1 (2018). In *Evans*, the State argued that law enforcement officers were justified in searching a wallet to look for a person's driver's

license because they had a statutory duty to complete an accident report—that is, the officer's search of a wallet was necessary to verify the driver's identity. Our Kansas Supreme Court disagreed, finding that

> "the circumstances did not present an exigency or an emergency that required an immediate verification of Evans' identity or give rise to the emergency doctrine exception to the warrant requirement. Compare *United States v. Dunavan*, 485 F.2d 201 (6th Cir. 1973) (upholding search when driver was foaming at the mouth and unable to talk and officer was seeking information explaining nature of the defendant's condition and the best means of treating it), and *Evans v. State*, 364 So.2d 93 (Fla. Dist. Ct. App. 1978) (holding officer lawfully searched purse for medical information that would account for driver's condition of being unable to communicate in any way), with *Morris v. State*, 908 P.2d 931 (Wyo. 1995) (holding search of effects not permissible when individual was conscious and able to ask and answer questions)." *Evans*, 308 Kan. at 1436.

The court's discussion in *Evans* focused on the plain-view doctrine. But it also noted there was no exigent need for the officers to verify Evans' identity and—unlike a situation where a person is found unconscious or is unable to communicate with officers—no medical emergency necessitated the search. 308 Kan. at 1436-37; see also 308 Kan. at 1437 (citing *Wright*, 804 P.2d at 871) (observing that "the Legislature did not impose a duty on officers that would justify invading the privacy guaranteed by the Fourth Amendment when . . . *the driver is conscious and able to answer the officer's questions about her identity*"). (Emphasis added.)

Thus, although the emergency-aid exception did not apply in *Evans*, the court recognized that there may be exigent circumstances where an officer may be justified in searching a purse or other personal effect to address an emergency. And Kansas law enforcement officers may search a person's purse or wallet to seek information if that person is unconscious or uncommunicative and there are exigent circumstances, such as a medical emergency, necessitating the search. That is, the emergency-aid exception to the

warrant requirement may permit not only a search of a residence but also a search of personal belongings. In such circumstances, the emergency-aid exception applies when (1) law enforcement officers have an objectively reasonable basis to believe someone is seriously injured or imminently threatened with serious injury and (2) the manner and scope of any ensuing search is reasonable. See *Neighbors*, 299 Kan. at 249.

With this background, we must analyze the district court's conclusion that Officer Brown's search of Smith's purse fell within the emergency-aid exception to the warrant requirement. In other words, we must determine whether Officer Brown had an objectively reasonable basis to believe Smith's life or safety was in real and immediate danger and, if so, whether the manner and scope of the search of Smith's purse was reasonable. *Neighbors*, 299 Kan. at 249; *Wright*, 804 P.2d at 870.

When Officer Brown arrived at the scene, Smith was unconscious in her vehicle. Smith could have been sleeping, but she did not respond to the officers' repeated pounding on the window, shouting, or even their poking of her head with the lockout tool. The officers were also informed that a woman named "Brittany Smith" had a history of opioid abuse, which—along with her unresponsiveness—led the officers to believe that she had potentially overdosed and was in need of immediate medical assistance. Even after the officers opened the door to the car and were able to rouse Smith, she remained incoherent and was unable to hold up her head; she struggled to respond to basic questions. While Smith was somewhat conscious, her condition not only made the officers' and paramedics' communication with her difficult but further suggested her need for immediate medical attention. Under these circumstances, we conclude Officer Brown's belief that Smith's life or safety was in immediate danger due to a potential overdose was objectively reasonable. Accord *State v. McKenna*, 57 Kan. App. 2d 731, 737-40, 459 P.3d 1274, *rev. denied* 312 Kan. ___ (August 31, 2020) (discussing similar steps in the context of a public-safety stop and concluding the officer's actions were reasonable).

10

Smith does not dispute that Officer Brown had an objectively reasonable basis to believe that she was suffering a medical emergency and was in need of urgent care. She also "does not take issue with Brown's initial retrieval of the purse." Instead, she argues that this emergent need dissipated when emergency medical personnel arrived at the scene and began administering care. In other words, Smith contends that Officer Brown's continued search of her purse exceeded the scope of the exigency after paramedics and firefighters arrived at the scene.

It is true, as our Kansas Supreme Court noted in *Neighbors*, that the emergency-aid exception is limited in time and scope. Under this limited authority, an officer may take reasonable steps to determine whether someone needs assistance and to provide that assistance. 299 Kan. at 251; see also *Mincey*, 437 U.S. at 393 (cautioning that a warrantless search "must be 'strictly circumscribed by the exigencies which justify its initiation'"). This authority ends when the emergent need dissipates—when it is no longer reasonable to believe that a person needs emergency assistance. See *Neighbors*, 299 Kan. at 254.

At the same time, Smith provides no legal authority to support her contention that the exigency justifying a warrantless search dissipates as soon as other medical personnel are present. Such a rule would undermine the purpose of the emergency-aid doctrine—a recognition that the need to protect or preserve life or avoid serious injury, in certain circumstances, supersedes a person's right of privacy—and would counteract the case-by-case analysis Kansas courts employ when determining whether the exception applies. We conclude there is no bright-line demarcation that defines when officers' limited authority to conduct a warrantless search under the emergency-aid exception ends. Instead, the touchstone of a court's analysis is reasonableness: whether the officers reasonably believe the search is necessary to provide emergency assistance and whether the search itself is reasonable in manner and scope.

Officer Brown searched Smith's purse seeking Smith's identity and any information that would explain the nature of Smith's condition and the best means of treating it. When the officer made this decision, the paramedics were beginning to treat Smith. But Smith's medical emergency and the need to provide her assistance did not abruptly end once the ambulance was on the scene.

During Officer Brown's search, Smith was only semi-conscious and was unable to effectively communicate with the emergency personnel on the scene. The scope of Officer Brown's search was tailored to helping aid the paramedics and firefighters to treat Smith more effectively. Unlike the officers in *Evans*, Officer Brown testified she searched Smith's purse to look for any substance, prescription or non-prescription, Smith might have taken to help the paramedics render proper medical treatment. Officer Brown explained that the search for Smith's driver's license was not simply to identify her for a police report but to look up whether she had any specific medical conditions—i.e., to help the paramedics render aid. And Officer Brown's search, which was aided by one of the paramedics, did reveal a prescription that helped to positively identify Smith.

As with any exception to the Fourth Amendment's warrant requirement, the scope of any search under the emergency-aid exception must be strictly circumscribed by a real exigency justifying the warrantless intrusion. Here, Officer Brown's actions were reasonably tailored to her attempts to aid emergency medical personnel in rendering appropriate care and treatment to Smith. We conclude Officer Brown's search of Smith's purse was justified by the emergency-aid exception to the warrant requirement. Thus, the district court correctly denied Smith's motion to suppress.

Affirmed.