NOT DESIGNATED FOR PUBLICATION

No. 123,153

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA DAVID HELFRICH,
*Appellant*.


MEMORANDUM OPINION


Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed January 7, 2022. Reversed and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., SCHROEDER and CLINE, JJ.


PER CURIAM:  After a bench trial on stipulated facts, the district court convicted Joshua David Helfrich of possession of methamphetamine. He appeals, arguing the district court improperly denied his motion to suppress evidence seized from his wallet. We agree that the officers lacked probable cause to search Helfrich's wallet and that the evidence must be suppressed.

1

*Factual and Procedural Background*

After officers arrested Helfrich in a Walmart parking lot on August 9, 2018, the State charged him with possession of drug paraphernalia, disorderly conduct, and possession of methamphetamine. Helfrich moved to suppress the methamphetamine officers had found in his wallet, arguing that the officers lacked authority to take his wallet while he was detained. He also maintained that if he was arrested his arrest was illegal because it lacked probable cause, and that officers exceeded the scope of a search incident to arrest by searching his wallet after taking it from his reach, citing *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct 1710, 173 L. Ed. 2d 485 (2009).

The State did not respond to Helfrich's motion to suppress either in writing or by oral argument in the district court, despite the fact that when a defendant moves to suppress evidence as the fruit of an illegal search, it is the State's burden to establish the lawfulness of the search. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

The district court denied the suppression motion, admitted the evidence, and later found Helfrich guilty of possession of methamphetamine. Helfrich challenges only the district court's ruling on his motion to suppress.

In reviewing the evidence, we consider only the evidence admitted at the suppression hearing. *State v. Jones*, 300 Kan. 630, 645, 333 P.3d 886 (2014) (as a general rule, review of district court's ruling on motion to suppress must be based solely on evidence presented at suppression hearing); *State v. Knight*, 55 Kan. App. 2d 642, 645, 419 P.3d 637 (2018) (limiting appellate review of the district court's suppression order to the evidence presented by the State at the suppression hearing). Our summary of facts below thus does not rely, as the State does, on evidence admitted at the preliminary hearing.

The State called only Officer Eli Norris to testify at the suppression hearing. Norris testified that he had been called to Walmart on a suspicious person call—someone was possibly "tweaking" in the electronics section and Walmart wanted him removed. He contacted Helfrich in Walmart's parking lot. He asked to speak to Helfrich, and Helfrich agreed. Helfrich produced his identification when asked. Norris said Helfrich could not stand still—he would get really close to Norris, who would back away, and then he would get really close again. Norris said Helfrich's actions and behavior showed he was probably high on meth, and that his experience in law enforcement made it pretty easy for him to recognize when someone was high on something.

A Walmart employee then told Norris that Helfrich had thrown something in the back of a truck that was leaving the parking lot. Norris followed the vehicle, which stopped at the gas station next door, and he found a toolbelt, which Helfrich had thrown into the truck, that had a torch-style lighter and a container with a powder-like substance. Based on Norris' experience as an officer, he believed the torch lighter was possible drug paraphernalia.

Norris returned to Walmart where Helfrich was already handcuffed. Norris frisked Helfrich before putting him in the patrol car and took his wallet out of his pocket. He testified that Helfrich was not under arrest even after he had been handcuffed and placed in the patrol car. A drug dog was called and alerted on the vehicle Norris thought Helfrich had arrived in—a truck reportedly owned by Helfrich's uncle, Jason Wise—but a search of the vehicle found nothing. Norris did not believe he had probable cause to arrest Helfrich even after the dog alerted on Wise's truck. After the dog alerted officers searched the truck but found nothing. Then Norris searched Helfrich's wallet and found in it a baggie of what he suspected was methamphetamine. He then arrested Helfrich based on the contraband found "on his person."

3

Helfrich admitted a video of the incident, captured by Undersheriff Darrel Chapman's bodycam. The video shows that officers removed Helfrich's wallet from his pocket and kept it for over 11 minutes before searching it.

The district court did not hear arguments from the parties but took the matter under advisement. It ultimately denied Helfrich's motion, applying the search incident to arrest exception to the warrant requirement.

The State later dismissed its charges for possession of drug paraphernalia and disorderly conduct. As for the remaining charge of possession of illegal drugs, Helfrich agreed to a bench trial on stipulated facts. Those facts included:

"8. Mr. Helfrich was detained by the Sheriff's department, placed into handcuffs, and placed in the back of a patrol vehicle in the Walmart parking lot. Prior to being placed into the patrol vehicle, Mr. Helfrich was searched and officers took custody of his wallet.

"9. During the course of these events, a drug dog was called to the location to sniff the truck Mr. Helfrich had arrived to Wal-Mart in. The dog alerted on the vehicle, but after a search of the vehicle, no narcotics were discovered.

"10. After the search of the truck, while Mr. Helfrich was still in custody, being detained, in the Sheriff's office patrol vehicle, officers searched the defendant's wallet.

"11. A small baggie of suspected Methamphetamine was discovered in the Defendant's wallet.

"12. Deputy Norris later field tested the substance and it tested positive for the presence of methamphetamine."

The district court found Helfrich guilty of possessing methamphetamine under K.S.A. 2018 Supp. 21-5706(a). It sentenced Helfrich to 11 months of incarceration but granted him 12 months of probation. Helfrich has since been discharged from probation.

Helfrich timely appeals.

4

*Did the District Court Err in Denying Helfrich's Motion to Suppress?*

Helfrich argues that the district court improperly relied on the search incident to arrest exception to deny his motion to suppress the evidence found in his wallet. Helfrich first contends that he was not arrested before officers searched his wallet but was only detained for investigation purposes. Helfrich then asserts that even if he was arrested before his wallet was searched, his arrest was illegal because officers lacked probable cause to arrest him. Lastly, Helfrich argues that the police lacked justification to search his wallet even after the dog alert.

*Standard of Review and Basic Legal Principles*

This court reviews the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de novo. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). "'Substantial competent evidence is that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved.'" *State v. Sanders*, 310 Kan. 279, 294, 445 P.3d 1144 (2019). In reviewing the factual findings, this court will not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

A warrant is generally required for a search to be reasonable.

"[T]he Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches. And a warrantless search is per se unreasonable unless a valid exception to the Fourth Amendment applies. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Recognized exceptions in Kansas include consent, search incident to lawful arrest, and exigent circumstances, among

others. *Neighbors*, 299 Kan. at 239." *City of Kingman v. Ary*, 312 Kan. 408, 410-11, 475 P.3d 1240 (2020).

The district court applied the search incident to lawful arrest exception here.

*Nature of Police Encounter*

Kansas courts recognize four types of police encounters: (1) voluntary encounters; (2) investigatory detentions; (3) public-safety stops and welfare checks; and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). During an investigatory detention, an officer may perform a pat-down search for weapons that might pose a danger to the officer. *Knowles v. Iowa*, 525 U.S. 113, 118-19, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998); *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Spagnola*, 295 Kan. 1098, 1106, 289 P.3d 68 (2012).

Helfrich first maintains that Chapman merely detained him for investigation and that the seizure and search of his wallet exceeded *Terry*'s scope. His argument that he was detained, but not arrested, before officers searched his wallet relies largely on Norris' testimony at the suppression hearing. Norris testified that Helfrich was detained and not under arrest even after he was handcuffed and placed in his patrol car. But the test for whether an arrest has occurred is objective—based on what a reasonable person would believe under the totality of the circumstances surrounding the incident. *State v. Hill*, 281 Kan. 136, 145, 130 P.3d 1 (2006).

Our appellate courts have recognized that police officers need not take unnecessary risks and may take reasonable precautionary measures to ensure their personal safety. See *State v. Nugent*, 15 Kan. App. 2d 554, 564, 811 P.2d 890 (1990); K.S.A. 22-2402(2). The use of handcuffs in pat-down procedures do not automatically convert an investigatory detention into an arrest. See *United States v. Shareef,* 100 F.3d

1491, 1502 (10th Cir. 1996) (use of firearms, handcuffs, or other forceful techniques does not necessarily transform *Terry* stop into full custodial arrest when circumstances reasonably warrant such measures); *Hill*, 281 Kan. at 142 (use of handcuffs or frisking detainee for weapons does not automatically convert investigatory detention into arrest).

We find it unnecessary to determine when Helfrich was first arrested. The district court implicitly found that he was arrested by the time officers searched his wallet, and substantial competent evidence supports that finding. By then, Helfrich was handcuffed and placed in Norris' patrol car. We thus focus on whether a reasonable officer would have had independent probable cause to arrest *before* the search. See *State v. Beltran*, 48 Kan. App. 2d 857, 887, 300 P.3d 92 (2013).

*Probable Cause*

To be lawful, an arrest must be supported by probable cause. "Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed [a] crime." *Hill*, 281 Kan. at 146. Probable cause establishes something to be more than a reasonable suspicion but not so much as more probably true than not true. It exists "when the facts and circumstances within the arresting officer's knowledge are sufficient to assure a person of reasonable caution that an offense has been or is being committed and the person being arrested is or was involved in a crime." 281 Kan. at 146.

Kansas courts do not assess probable cause based on an officer's subjective belief. Instead, courts consider how an objectively reasonable law enforcement officer would look at the known circumstances. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016). The officer's subjective belief or conclusion of the arresting officer is irrelevant. See *Beltran*, 48 Kan. App. 2d at 882 ("[I]f the actual officer incorrectly, though in good

7

faith, believes he or she lacks probable cause to arrest [and, thus, to search incident to that arrest], that mistaken opinion doesn't figure into a court's Fourth Amendment analysis.").

The State argues that these facts from the suppression hearing support probable cause to arrest Helfrich for drug possession:

- Helfrich's actions in Walmart, including his "golf-swinging antics" and his interactions with the toolbelt;
- Helfrich's demeanor that the officers observed; and
- the drug dog alert on Wise's truck.

The district court found Helfrich was "very animated," and the video supports that finding. And at the suppression hearing, Norris said Helfrich "could not stand still. He would get really close to me, and then I would back away, and he would get close again, and he just acted, to me, like he was on probably meth, you know, just by his actions and the way his behavior was." So the record includes sufficient evidence to show the officer's reasonable belief that Helfrich was on drugs. The officers thus acted reasonably in handcuffing Helfrich for safety purposes, frisking him, and removing his knife. See *State v. Johnson*, 293 Kan. 959, 967, 270 P.3d 1135 (2012) (permitting a law enforcement officer to conduct an officer safety search and remove any potentially dangerous weapons from a suspect's person).

But a person's use of drugs does not equate to drug possession. "'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." PIK Crim. 4th 57.040 (2018 Supp.). True, the jury may consider the defendant's use of drugs in determining whether the defendant knowingly possessed a controlled substance. See *State v. Adams*, 294 Kan. 171, 184, 273

P.3d 718 (2012). But the State does not contend that evidence of drug use is sufficient to give rise to probable cause to arrest for drug possession.

And K.S.A. 22-2402(2), which codifies *Terry*, does not generally permit the removal of one's wallet:

> "If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, such officer may take and keep it until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person."

No evidence established that officers reasonably thought Helfrich's wallet contained a threat to the officers or evidenced a crime when they removed it from his person, 11 to 15 minutes before they searched it. So the State fails to show that the seizure of Helfrich's wallet was justified.

Nor was the search of that wallet justified under *Terry* or K.S.A. 22-2402(2). See *Johnson*, 293 Kan. at 968 ("Once Tucker secured the pack of cigarettes, any nonhysterical threat its contents may have posed was eliminated and no further search was permitted.").

> "K.S.A. 22-2402(2)—again, a Kansas codification of *Terry*—specifically allows an officer to seize and keep only items 'the possession of which may be a crime or evidence of crime . . . until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person.' It does not permit a general search of any seized item not immediately recognizable as an unlawfully possessed weapon or other evidence of a crime." 293 Kan. at 968.

Helfrich's wallet was not immediately recognizable as an unlawfully possessed weapon or other evidence of a crime. And no testimony established that officers reasonably

9

believed that the wallet contained razors or other weapon-like or evidentiary items. The State thus fails to show that the officers had authority to search the wallet when they seized it. Compare *State v. Smith*, 59 Kan. App. 2d 28, 38, 476 P.3d 847 (2020) (finding officer's search of a semi-conscious driver's purse justified by the emergency-aid exception to the warrant requirement), *rev. denied* 313 Kan. 1045 (2021).

True, a drug dog alerted on Wise's truck after officers seized Helfrich's wallet, and the district court apparently found that to be significant to the legality of the search: "[T]he Undersheriff decide[d] that the wallet should be searched since the search of a truck based on a dog sniff had yielded an alert for drugs but nothing was located."

The district court did not specifically address probable cause, yet it apparently relied on *Gant*, 556 U.S. at 351, in upholding the search of the wallet as incident to a lawful arrest. And *Gant* can justify law enforcement officers' "search [of] a vehicle incident to a recent occupant's arrest." *Gant*, 556 U.S. at 343.

But *Gant* recognizes a police officer's authority to conduct a warrantless search *of a vehicle* incident to an arrest under two circumstances: "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search (the officer-safety justification) or when it is reasonable to believe evidence relevant to the crime of arrest might be in the vehicle (the evidence-preservation justification)." *State v. Torres*, 308 Kan. 476, Syl. ¶ 4, 421 P.3d 733 (2018). Neither of those circumstances was present here. And *Gant*'s rationale for a vehicle search cannot save the search of Helfrich's wallet which was not in the vehicle but was safely in the officers' possession. See *Sanders*, 310 Kan. at 298-99 (finding search of a deck of cards taken before arrest and thus inaccessible to the suspect unreasonable under *Gant*).

We recognize that a drug dog's alert on a vehicle establishes probable cause for a law enforcement officer's *search of a vehicle*. See *State v. Horton*, 300 Kan. 477, 488,

331 P.3d 752 (2014); *State v. Barker*, 252 Kan. 949, 959-60, 850 P.2d 885 (1993). But here, the video shows that officers took Helfrich's wallet from him 11-15 minutes before they searched it, and the State offers no reason why the dog alert on the vehicle gave officers probable cause to search an item in their control.

We also recognize that courts have consistently held that finding drug paraphernalia in a vehicle provides probable cause to search the vehicle for more illegal drug paraphernalia and drugs. See *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999) (officers had probable cause to believe there were illegal drugs in the car when hypodermic syringe found in driver's pocket); *State v. Boyd*, 275 Kan. 271, 276, 64 P.3d 419 (2003) ("There seems to be no question that, once the officer found a crack pipe in [the driver's] vehicle, he had probable cause to believe that illegal drugs would be found there."); *Knight*, 55 Kan. App. 2d at 648-49 (2018) (glass pipe in passenger's waistband provided sufficient probable cause to search car). Here, Norris reasonably believed that the torch lighter in the toolbelt Helfrich had thrown into the passing truck was possible drug paraphernalia. But the State shows no authority that this basis to search the truck somehow justifies the officers' search of the wallet that was in their possession.

The officers thus lacked probable cause to arrest Helfrich for possession of drugs before they found drugs in his wallet. And the State asserts probable cause for no other crime.

*Harmless Error*

We next ask whether the erroneous denial of Helfrich's suppression motion was harmless error. See *State v. Thornton*, 312 Kan. 829, 832-33, 481 P.3d 1212 (2021) (criticizing this court's finding of error in admitting evidence without considering harmlessness of the admission). A constitutional error may be declared harmless only

11

when the party benefitting from the error proves beyond a reasonable doubt that the error did not affect the outcome of the trial given the entire record. *State v. James*, 301 Kan. 898, 910, 349 P.3d 457 (2015).

The burden rests on the State to show harmlessness. But the State does not offer any constitutional error analysis. Because the district court seemingly found Helfrich guilty based only on the methamphetamine taken from Helfrich's wallet, we find the error not harmless.

Helfrich's motion to suppress should have been granted. We therefore reverse the judgment of the district court and remand the case to the district court for further proceedings consistent with this opinion.

Reversed and remanded with directions.