

FILED

Nov 13 2023, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher C. Crawford
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Herman O. Fritz,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 13, 2023

Court of Appeals Case No.
22A-CR-2340

Appeal from the Elkhart Superior
Court

The Honorable David C.
Bonfiglio, Judge

Trial Court Cause No.
20D06-2102-F6-147

**Opinion by Judge Pyle**

Judges Vaidik and Mathias concur.

**Pyle, Judge.**

## Statement of the Case

Herman O. Fritz ("Fritz") appeals his convictions, following a jury trial, for Level 6 felony possession of methamphetamine,[1] Class A misdemeanor resisting law enforcement,[2] Class A misdemeanor possession of marijuana with a prior conviction,[3] and Class C misdemeanor possession of paraphernalia.[4] Fritz argues that: (1) the trial court abused its discretion in admitting evidence seized from a patdown search and a subsequent search incident to Fritz's arrest because the searches violated his constitutional rights; and (2) there was insufficient evidence to support Fritz's possession of marijuana conviction. Concluding that the trial court properly admitted the evidence, but the State failed to present sufficient evidence to sustain Fritz's possession of marijuana conviction, we affirm in part, reverse in part, and remand.

We affirm in part, reverse in part, and remand.

## Issues

1. Whether the trial court abused its discretion by admitting evidence found during a patdown search of Fritz and a subsequent search incident to Fritz's arrest.

---

[1] IND. CODE § 35-48-4-6.1.

[2] I.C. § 35-44.1-3-1.

[3] I.C. § 35-48-4-11.

[4] I.C. § 35-48-4-8.3.

2. Whether there was sufficient evidence to support Fritz's possession of marijuana conviction.

## Facts

[3] On the afternoon of January 29, 2021, Elkhart Police Department Sergeant Seth Watkins ("Sergeant Watkins") was dispatched to a local grocery store regarding a medical emergency. When Sergeant Watkins arrived, he saw a disheveled man, later identified as fifty-eight-year-old Fritz, lying on his back in the store's parking lot. Concerned for Fritz's well-being, Sergeant Watkins approached Fritz and asked him what had happened. Fritz told Sergeant Watkins that he "must have [fallen]." (Tr. at 98). When Sergeant Watkins asked Fritz if he had ingested any drugs, Fritz "slowly responded no." (Tr. at 98).

[4] Paramedics arrived at the grocery store parking lot shortly after Sergeant Watkins' arrival, and the medics and Sergeant Watkins helped Fritz to his feet so they could "start trying to figure out what [was] going on" with Fritz. (Tr. at 99). At that point, Sergeant Watkins decided to perform a patdown search of Fritz for officer safety, to "make sure that [Fritz] was not armed[,]" and so that the medics would not be harmed when they administered treatment, in the event Fritz later suffered "some type of psychiatric issue[.]" (Tr. at 99). Because Sergeant Watkins recently had been stabbed with a drug needle while working a different case, the sergeant asked Fritz if he "had anything that was going to stick or poke" the sergeant, and Fritz answered in the negative. (Tr. at 99).

[5] The jacket that Fritz was wearing was unzipped and open, and Sergeant Watkins could see the jacket's interior pocket. Sergeant Watkins patted down the left side of Fritz's jacket and the jacket's outer pocket. Sergeant Watkins then patted down the interior pocket and felt a long cylindrical object with a bulbous end that Sergeant Watkins believed, based on his training and experience, to be a pipe used to ingest methamphetamine. Sergeant Watkins removed the "longer cylindrical object" and also found and removed a "smaller cylindrical object with a bulbous end" that Sergeant Watkins also believed to be a methamphetamine pipe. (Tr. at 101). Sergeant Watkins asked Fritz how he had used the pipes, and Fritz told Sergeant Watkins that he had used the pipes to smoke tobacco and synthetic drugs. Sergeant Watkins also patted down Fritz's front pants pockets and felt objects inside the pockets, but Sergeant Watkins did not remove the objects.

[6] To determine Fritz's mental state, Sergeant Watkins asked Fritz if he knew who was President; the day of the week; and the current year. Fritz told Sergeant Watkins that Kennedy was the president and provided incorrect answers to the other two questions. One of the medics asked Fritz what drugs he had taken, and Fritz responded, "[a]nything and everything." (Tr. at 106).

[7] Sergeant Watkins already had determined that Fritz was under arrest for possession of paraphernalia based on finding what he believed to be methamphetamine pipes in Fritz's pocket. However, because Sergeant Watkins was concerned that Fritz might have sustained a head injury and would need to

be medically cleared before going to jail, Fritz was transported by ambulance to Elkhart General Hospital for evaluation.

[8] After Fritz had arrived at the hospital and had been placed in a room, Sergeant Watkins continued his search of Fritz's person, this time incident to Fritz's arrest. Sergeant Watkins searched Fritz's right front pants pocket and found a black mask that contained a plastic baggy with a white crystal-like substance inside, later tested and determined to be 3.04 grams of methamphetamine.[5] When Sergeant Watkins found the methamphetamine, Fritz became upset, began to yell obscenities, and tried to get out of the hospital bed. Fritz tried to resist the search and "pull[] away" from Sergeant Watkins. (Tr. at 112-113). Fritz threatened to kill Sergeant Watkins and attempted to kick the attending hospital personnel.

[9] Sergeant Watkins physically restrained Fritz, handcuffed him to the hospital bed, and continued to search Fritz's person and the pockets of his clothing. Sergeant Watkins eventually found in the left pocket of Fritz's jacket two hand-rolled cigarettes that contained a green leafy substance that had the "smell of marijuana." (Tr. at 115). Sergeant Watkins later field-tested the cigarettes and determined that the substance inside contained THC, the "active ingredient in marijuana." (Tr. at 120).

---

[5] Sergeant Watkins found a clear container in Fritz's left front pants pocket containing a white crystal-like substance. For reasons not apparent from the record, that substance was not lab-tested.

[10] Hospital personnel sedated Fritz, and Fritz eventually fell asleep. After Fritz awoke, Sergeant Watkins gave him a *Miranda* warning and asked Fritz if the cigarettes contained a synthetic substance or marijuana. Fritz answered, "[M]arijuana." (Tr. at 116). Sergeant Watkins then asked Fritz if the crystal-like substance he had found was methamphetamine, and Fritz stated that it was. After Fritz had been medically cleared to leave the hospital, Sergeant Watkins transported Fritz to jail.

[11] In February 2021, the State charged Fritz with Level 6 felony possession of methamphetamine, Class A misdemeanor resisting law enforcement, Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. In August 2021, Fritz filed a motion to suppress the evidence obtained during the patdown search. The trial court held a hearing on the motion to suppress on October 25, 2021. The following day, the trial court issued its order denying Fritz's motion, and the matter proceeded to a jury trial held on August 15, 2022.

[12] During Sergeant Watkins' testimony at trial, Fritz objected to the admission of the evidence obtained during Sergeant Watkins' patdown search of his person. The trial court overruled the objection. At the conclusion of the trial, the jury found Fritz guilty on all counts.[6]

---

[6] Following the jury's finding of guilt on the underlying offense of Class B misdemeanor possession of marijuana, Fritz pled guilty to the enhanced offense of Class A misdemeanor possession of marijuana with a prior conviction for a drug offense.

On September 15, 2022, the trial court sentenced Fritz as follows: 912 days for the Level 6 felony possession of methamphetamine conviction; 365 days for the Class A misdemeanor resisting law enforcement conviction; 180 days for the Class A misdemeanor possession of marijuana conviction; and 60 days for the Class C misdemeanor possession of paraphernalia conviction. The trial court ordered the sentences to run concurrently but suspended all of the time to probation.

Fritz now appeals.

## Decision

Fritz argues that: (1) the trial court abused its discretion in admitting evidence seized from a patdown search and a subsequent search incident to Fritz's arrest because the searches violated his constitutional rights; and (2) there was insufficient evidence to support Fritz's possession of marijuana conviction. We will review each argument in turn.

### 1. Admission of Evidence

Fritz argues that the trial court abused its discretion when it admitted the evidence obtained from the patdown search and the subsequent search incident to Fritz's arrest because the searches were conducted in violation of his constitutional rights. We note that Fritz appeals following a completed trial. Thus, his appeal "is best framed as challenging the admission of evidence at trial[,]" rather than a denial of a motion to suppress. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). We review the admission of evidence for an abuse of

discretion, which occurs only when the admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* at 260. "We neither reweigh the evidence nor reevaluate the witnesses' credibility; rather, we view the evidence in the light most favorable to the [judgment], and we will affirm that [judgment] unless we cannot find substantial evidence of probative value to support it." *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). However, whether the facts establish a constitutional violation is a question of law that we review de novo. *See, e.g.*, *Pinner v. State*, 74 N.E.3d 226, 229 (Ind. 2017).

[17] Fritz argues that Sergeant Watkins' patdown of his person violated his right to be free from unreasonable searches under both the Fourth Amendment to the United States Constitution and Article 1, Section 11, of the Indiana Constitution. Although the Fourth Amendment and Article 1, Section 11, contain parallel language, each requires a separate, independent analysis. *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019). The State asserts that Fritz waived his state constitutional challenge to the search of his person when he failed to include a separate Indiana constitutional analysis in his motion to suppress; failed to specifically argue at the suppression hearing that the search violated the Indiana Constitution; and failed to argue a violation of the Indiana Constitution when he objected to the admission of the challenged evidence during the jury trial. And we note that while Fritz references and cites to Article 1, Section 11 of the Indiana Constitution in his appellate brief, he does not articulate a separate argument under the Indiana Constitution.

Accordingly, Fritz's state constitutional claim is waived. *See, e.g.*, *Redfield v. State*, 78 N.E.3d 1104, 1108 (Ind. Ct. App. 2017) (finding the defendant waived an Article 1, Section 11, claim where his arguments in the trial court mentioned the state constitutional claim but did not provide any independent analysis for it) (citing *Wilkins v. State*, 946 N.E.2d 1144, 1147 (Ind. 2011), *reh'g denied*), *trans. denied*; *see also Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002) ("Because Abel presents no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived."). Therefore, we address Fritz's claim under the Fourth Amendment alone.

### Patdown Search

[18] Fritz argues that the evidence obtained as a result of the patdown search, as well as the subsequent search incident to Fritz's arrest, should have been suppressed and should not have been admitted at trial. According to Fritz, the patdown search was improper because there was "no indication that [police] officers arriving [at the grocery store parking lot] would be encountering an individual [who was] armed and dangerous[,]" thus, the patdown search was "unreasonable[.]" (Fritz's Br. 17). The State argues that the patdown search was lawful under the Fourth Amendment because it was performed for the safety of the medical personnel tending to Fritz, who was found "disoriented and lying on the ground in the middle of a parking lot on a cold winter day." (State's Br. 10).

[19] The Fourth Amendment states that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV.

[20] "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). This protection has been "extended to the states through the Fourteenth Amendment." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception." *Clark*, 994 N.E.2d at 260. "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Bradley*, 54 N.E.3d at 999 (quotation marks and citations omitted).

[21] One such exception relevant to the circumstances in this case is that the law enforcement officer had "an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger[.]" *Michigan v. Fisher*, 558 U.S. 45, 49, 130 S. Ct. 546, 549, 175 L. Ed. 2d 410 (2009) (internal quotations omitted). *See also Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct.

2408, 2413, 57 L. Ed. 2d 290 (1978) ("Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.") (footnotes omitted). Our Courts have recognized this emergency aid exception, *see M.O. v. State*, 63 N.E.3d 329, 332 (Ind. 2016), but have yet to apply the exception to a search of a person.

[22] In *M.O.*, the emergency aid exception was recognized under circumstances where an officer responded to a report that a woman was trapped under her car. That report raised a reasonable concern that emergency medical assistance was needed and prompted further investigation. However, the investigation did not objectively support that concern. M.O. was not under her vehicle or even at the gas station when the officers arrived. While it was not unreasonable for the officer to look for her, the officer noted that she operated her vehicle normally and was not observed committing any traffic infractions or criminal conduct.

[23] Our supreme court in *M.O.* stated that the test for applying the emergency aid exception was objective and that the government must establish that the circumstances as they appeared at the moment would lead a reasonable, experienced law enforcement officer to believe that someone inside the vehicle required immediate assistance. 63 N.E.3d at 333. The Court concluded that the State had failed to carry its burden of showing that an exception to the warrant requirement of the Fourth Amendment justified the stop. Accordingly, the Court reversed M.O.'s conviction. *Id.*

[24] However, in *Vauss v. United States*, 370 F.2d 250, 251-252 (D.C. Cir. 1966) (per curiam), a case we find instructive, the emergency aid exception was extended to the warrantless search of a person. In *Vauss*, police officers found a man lying unconscious on a public street. Unable to rouse him, the police called for an ambulance. As they waited for the ambulance to arrive, one of the officers searched the defendant's pockets for identification but, instead, found narcotics. The United States Court of Appeals for the District of Columbia Circuit declined to suppress the evidence. The Court held that the narcotics were legally seized, finding that "[a] search of one found in an unconscious condition is both legally permissible and highly necessary." *Id.* at 252.

[25] In the instant case, the circumstances leading to the patdown of Fritz's person and resulting in the seizure of the pipes, are similar to the circumstances in *Vauss*. On a cold day in January, Sergeant Watkins responded to a call regarding a medical emergency in a grocery store parking lot. Sergeant Watkins found Fritz lying on his back in the middle of the parking lot. Fritz told Sergeant Watkins that he "must have [fallen]." (Tr. at 98). When Sergeant Watkins asked Fritz if he had ingested any drugs, Fritz's response of "no" was "slow[,] long, [and] drawn out." (Tr. at 98). Sergeant Watkins testified that "[c]ommonly[,] with unknown [medical issues,] when we are dispatched to them, a common cause . . . [o]ften times . . . is a drug or alcohol related issue." (Tr. at 98). Sergeant Watkins performed a patdown search of Fritz for his safety and the safety of the paramedics so that the medics would not be harmed

when they administered treatment, in the event Fritz later suffered "some type of psychiatric issue[.]" (Tr. at 99).

[26] The protective patdown search that Sergeant Watkins performed before Fritz was transported to the hospital in the ambulance was limited to a search for weapons and/or items that might harm Sergeant Watkins or the paramedics as they administered treatment to Fritz. Under such circumstances, Sergeant Watkins had an objectively reasonable basis to believe that Fritz might need medical assistance, and it was not unreasonable for the sergeant to be concerned about his safety and the safety of the attending paramedics when they rendered assistance to Fritz. Thus, we do not believe the patdown search of Fritz's person performed by a concerned police officer violates Fritz's Fourth Amendment rights.[7]

[27] Therefore, we conclude that the State has carried its burden of showing an exception to the warrant requirement to justify the patdown search. We also conclude that the search was permissible under the emergency aid exception to the Fourth Amendment because it was reasonable for Sergeant Watkins to

---

[7] *See, e.g.*, *State v. Smith*, 59 Kan. App. 2d 28, 476 P.3d 847 (2020), *rev. denied*. In *Smith*, officers were dispatched to check on Smith, who had apparently fallen asleep in her car parked in someone else's driveway. After failing to rouse Smith, the officers removed her from the car, but she remained largely unresponsive and appeared to be suffering from an overdose. When emergency personnel arrived at the scene, an officer searched Smith's purse, looking for her identification and any information about substances she may have ingested. Under these circumstances, the Court found that the officer's belief that Smith's life or safety was in immediate danger because of a potential overdose was objectively reasonable, satisfying the first prong of the emergency aid exception (that is, whether the officers reasonably believe the search was necessary to provide emergency assistance) and upholding the search of Smith's purse. 59 Kan. App. 2d at 36-38, 476 P.3d at 853-854.

believe that Fritz needed medical attention.[8]  Therefore, we hold that the trial court properly admitted into evidence the methamphetamine pipes found on Fritz's person as a result of the patddown search.

[28]  Fritz also argues that, even if the patdown was proper, the *removal* of the methamphetamine pipes from his pocket was improper.  We disagree.  The United States Supreme Court recognized a plain-feel exception to the warrant requirement in *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 2137, 124 L. Ed. 2d 334 (1993).  The Supreme Court explained in *Dickerson* that

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375-76, 113 S. Ct. at 2137.

[29]  In determining the admissibility of contraband seized without a warrant under the "plain feel" doctrine, two issues are dispositive:  (1) whether the contraband was detected during an initial patdown for weapons rather than during a further search; and (2) whether the identity of the contraband was immediately apparent to the officer.  *Patterson v. State*, 958 N.E.2d 478, 487 (Ind. Ct. App.

---

[8] As an appellate court, we will sustain the trial court if it can be done on any legal ground apparent in the record.  *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind. 2002).

2011) (quoting *Wright v. State*, 766 N.E.2d 1223, 1233 (Ind. Ct. App. 2002)). The phrase "immediately apparent" does not mean that an officer must be certain about the object's identity; rather, an officer must "have probable cause to believe that the item is contraband before seizing it[.]" *Dickerson*, 508 U.S. at 376, 113 S. Ct. at 2137.

[30] Sergeant Watkins' testimony demonstrates that it was immediately apparent to him that the object he felt in Fritz's pocket was contraband. Sergeant Watkins testified that he had been involved in "well over 100" drug-related cases and affirmed that he had experience with "various types of paraphernalia, including pipes." (Tr. at 96). He testified that when he patted down Fritz's jacket and the jacket's outer and inner pockets, he "felt a long, cylindrical object with a bulbous end which is essentially a meth[amphetamine] pipe." (Tr. at 100). Sergeant Watkins further testified that "[t]hrough [his] training and experience," he had realized that when he felt the object, it was a "hard object," "a distinct object," and was "used commonly to ingest illegal drugs into the body." (Tr. at 100).

[31] The methamphetamine pipe's identity was immediately apparent to Sergeant Watkins based on its shape and consistency. Therefore, Sergeant Watkins' warrantless seizure of the pipe was permissible under the plain feel doctrine.

### *Search Incident to Arrest*

[32] Fritz also challenges the search that Sergeant Watkins conducted at the hospital that resulted in the seizure of the methamphetamine and the marijuana

cigarettes. Another exception to the warrant requirement is a search incident to a lawful arrest. *Wilkinson v. State*, 70 N.E.3d 392, 403 (Ind. Ct. App. 2017). An officer may conduct a warrantless search of an arrestee's person and the area in the person's immediate control if the officer has probable cause to make an arrest. *Id*. "Probable cause for an arrest exists if at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the suspect has committed the criminal act in question." *Id*. A suspect is considered under arrest when a police officer interrupts his freedom and restricts his liberty of movement. *Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007). The fact that a police officer does not inform a defendant he is under arrest prior to a search does not invalidate the search incident to arrest exception as long as there is probable cause to make an arrest. *Id.*

[33] We have already determined that the removal of the pipes from Fritz's pocket was permissible. Once Sergeant Watkins discovered the pipes that he believed were used to consume methamphetamine, he had probable cause to arrest Fritz for possession of paraphernalia. *See* IND. CODE § 35-48-4-8.3. Sergeant Watkins testified that, at that point, he had determined that Watkins was under arrest for possession of paraphernalia, but out of caution, had Fritz transported to the hospital for evaluation. The search Sergeant Watkins performed at the hospital incident to Fritz's arrest resulted in Sergeant Watkins finding the methamphetamine in Fritz's pants pocket and the marijuana cigarettes in Fritz's jacket pocket. Sergeant Watkins' discovery of the methamphetamine

and the marijuana cigarettes in Fritz's pockets did not violate the Fourth Amendment. Therefore, the trial court properly admitted the evidence.

[34] In sum, the patdown search, the removal of the methamphetamine pipes under the plain feel doctrine, and the search incident to Fritz's arrest that resulted in the discovery of the methamphetamine and the marijuana cigarettes, are exceptions to the warrant requirement of the Fourth Amendment. The evidence obtained was properly admitted at trial.

## 2. Sufficiency of the Evidence

[35] Next, Fritz challenges the sufficiency of the evidence for his possession of marijuana conviction. He contends that there was insufficient evidence to support the conviction because the State failed to prove the percentage of the THC concentration in what the State alleged was marijuana in the cigarettes. He argues, essentially, that evidence of the THC concentration was essential so the factfinder could reasonably distinguish between marijuana, which is illegal to possess, and hemp, which is legal.

[36] Our standard of review for sufficiency of evidence claims is well-settled. We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We consider only the probative evidence and reasonable inferences supporting the verdict. *Id.* Reversal is appropriate only when no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[37] In order to convict Fritz of possession of marijuana, the State was required to prove that he: (1) knowingly or intentionally; (2) possessed; (3) marijuana, pure or adulterated. I.C. § 35-48-4-11(a)(1). "Marijuana" is defined by statute as "any part of the plant genus Cannabis whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and hash oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin." I.C. § 35-48-1-19(a). Importantly, however, "[t]he term [marijuana] does not include: . . . hemp (as defined by IC 15-15-13-6)." I.C. § 35-48-1-19(b)(6). "Hemp" is in turn defined as:

> the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, **with a delta-9-tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis**, for any part of the Cannabis sativa L. plant.

I.C. § 15-15-13-6 (emphasis added). "Accordingly, in Indiana, the difference between a legal substance, such as hemp, and illegal marijuana is determined by the concentration of delta-9-THC in a particular substance: to be illegal, the concentration of delta-9-THC must be more than 0.3%." *Rojo v. State*, 202 N.E.3d 1085, 1088 (Ind. Ct. App. 2022), *trans. denied*. *See also Fedij v. State*, 186 N.E.3d 696, 708 (Ind. Ct. App. 2022) ("[A]s a matter of Indiana law, the difference between legal hemp and illegal marijuana is determined by the percent concentration of THC in a particular substance: to be illegal, the percent concentration of THC must be more than 0.3%").

[38] In support of Fritz's argument that his possession of marijuana conviction cannot stand because the State failed to prove the percentage of the THC concentration of the substance found in the cigarettes, Fritz cites both *Fedij* and *Rojo*. In *Fedij*, a panel of this court reversed Fedij's conviction for possession of marijuana due to the State's failure to prove that the seized substance was illegal marijuana, as opposed to legal hemp. At Fedij's trial, the State's witnesses "were unequivocal in their testimony that they had no way to distinguish any of the substances between hemp and marijuana absent a test for the percent concentration of THC." *Fedij*, 186 N.E.3d at 708.

[39] In *Rojo*, another panel of this court reversed Rojo's conviction for possession of marijuana based on insufficient evidence to establish that the substance found on Rojo's person was illegal marijuana with a THC concentration of 0.3% or more. At Rojo's trial, the officer had testified that he knew the substance that was seized from Rojo was marijuana due to markers regarding sight and smell. However, applying the reasoning in *Fedij*, we held that "the State presented no evidence from which a reasonable factfinder could conclude that the substance seized from Toledo Rojo was in fact marijuana and not a similar-smelling or -looking substance that is not illegal in Indiana." *Rojo*, 202 N.E.3d at 1089.

[40] In the case before us, the State introduced evidence indicating that based on a field test, the substance in the cigarettes tested positive for the presence of THC. Sergeant Watkins testified that based on his experience, the green leafy substance in the cigarettes had the "smell of marijuana." (Tr. at 115).

However, the State did not present any evidence of the delta-9-THC concentration in the cigarettes.

[41] Our General Assembly has established a clear distinction between legal hemp and illegal marijuana based on the THC concentration present in the plant material,[9] the effect being to now require the State to prove beyond a reasonable doubt that a substance is marijuana by proving that the substance's delta-9-THC concentration exceeds 0.3% on a dry weight basis. Here, the State failed to present any evidence of the delta-9 THC concentration of the substance in the cigarettes found on Fritz's person. Consequently, and as we found in *Fedij*, the State has presented "no evidentiary basis from which a reasonable fact-finder could conclude that the [substance in the cigarettes was] in fact marijuana and not hemp." *Fedij*, 186 N.E.3d at 709. Thus, the evidence presented at Fritz's trial was insufficient for the jury to conclude that the cigarettes found on Fritz's person contained marijuana and not a legal substance.

[42] Regarding Fritz's post-*Miranda* admission – that the substance in the cigarettes was marijuana – said admission does not alter our determination that the evidence was insufficient to sustain Fritz's possession of marijuana conviction. Fritz's admission was a nonjudicial confession, and it is well-settled that a person may not be convicted of a crime based solely on a nonjudicial confession of guilt. *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017) (citing *Green v. State*,

---

[9] *See* I.C. §§ 35-48-1-19(a), 15-15-13-6.

304 N.E.2d 845, 848 (Ind. Ct. App. 1973)). Rather, there must be independent proof of the *corpus delicti* before the defendant may be convicted upon a nonjudicial confession. *Id.* "Proof of the *corpus delicti* means 'proof that the specific crime charged has actually been committed by someone[.]'" *Shinnock*, 76 N.E.3d at 843 (quoting *Walker v. State*, 249 Ind. 551, 559, 233 N.E.2d 483, 488 (Ind. 1968)). We have determined that, in the instant case, the State failed to present sufficient evidence to show that Fritz possessed marijuana and not a legal substance. The only evidence presented to show that the substance was, in fact, marijuana was Sergeant Watkins' opinion testimony, based on his experience, and the results of a field test showing that the substance contained THC. Therefore, we reverse Fritz's Class A misdemeanor possession of marijuana conviction.

[43] Based on the foregoing, we hold that the trial court did not abuse its discretion when it admitted into evidence the methamphetamine pipes found during the patdown search and the marijuana cigarettes found during the search incident to Fritz's arrest. We further hold that the State failed to present sufficient evidence to sustain Fritz's conviction for possession of marijuana. Accordingly, we affirm in part, reverse in part, and remand with instructions for the trial court to vacate Fritz's conviction and sentence for the Class A misdemeanor possession of marijuana conviction.

Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, J., and Mathias, J., concur.